STATE, DEFENDANT IN ERROR, v. JOHN H. YOUNG, PLAINTIFF IN ERROR.

Argued July 5, 1917—Decided March 4, 1918.
Reargued June 17, 1919—Decided November 17, 1919.

1. It is error to permit a witness for the state, on direct examination, to testify that he was under indictment, jointly with the defendant, for another crime that had no tendency logically to prove the substantive case of the state.
2. A mere charge of crime cannot effect the credibility of a witness, since, even if it take the solemn form of an indictment, the accused is presumed innocent.

---

On error to the Supreme Court.

For the state, *Wilbur A. Mott* (*J. Henry Harrison* on the brief).

For the plaintiff in error, *Robert H. McCarter.*

After the original argument in the Court of Errors and Appeals, the following opinion was filed by Mr. Justice Kalisch:

The plaintiff in error, a surgeon, was convicted of manslaughter, in the Essex Quarter Sessions, for causing the death of Emma C. Truesdell through malpractice, in the performance of a surgical operation upon her, she having died upon the operating table.

The record of the conviction and judgment of the trial court was removed by the plaintiff in error, by writ of error sued out of the Supreme Court, in which latter tribunal the judgment was affirmed.

That record is now before us for review by writ of error sued out by the plaintiff in error in this court to the Supreme Court.

The argument, so elaborately and forcefully addressed to us by counsel for plaintiff in error upon the merits of the case, cannot be properly considered here where we deal exclusively with the legal questions presented by the record.

It may very well be that the testimony tending to establish the guilt of the plaintiff in error is of such meagre and attenuated character that tested by a strict analysis it is not clearly convincing of the guilt of the plaintiff in error; and even though it may appear to us that on a motion for a new trial, in the trial court, such a motion might properly prevail, nevertheless, such a situation affords no legal ground for disturbing the verdict in this case here, so long as there is some testimony, no matter how slight, tending to support the finding of the jury.

It is only where there is no testimony to support a verdict and a motion is made for a direction of a verdict of not guilty, and such motion is refused, that such refusal may be properly assigned as error, reviewable here.

We come now to consider the legal questions presented by the record and advanced as reasons, by counsel for plaintiff in error, for a reversal of the judgment.

In the trial court one of the points made in behalf of the accused was that the removal of two parts of the smaller intestine, together with the larger intestine, could not possibly have been accomplished with the instruments that were alleged to have been used by the defendant in performing the operation. In this aspect of the case counsel for plaintiff in error requested the court to charge the jury as follows: "There was no duty to examine the witness with respect to any other instruments than those which the evidence disclosed were used. No inference can be drawn from the fact that the question was confined to the instruments which the evidence disclosed were used, there being no evidence whatever to show that any other instruments were used."

The court refused to charge this request, and, we think, properly so.

On the one hand, there was testimony tending to show that in fact there was no disturbance of the abdominal tract after death, and that when opened, in the presence of Dr. Washington, its contents were gone; and there was the testimony of every medical expert, except Dr. Washington, that they could not have been removed by the use of the instruments exhibited.

The legitimate inference from all this would be that the contents were removed before death and by some instruments other than those exhibited. On the other hand, was the defendant's claim that in fact the removal of the contents had occurred after death.

The jury evidently adopted the view that the contents were removed before death and by some instrument or instruments other than those exhibited. There was evidence on which to base such finding, and, hence, it would have been improper for the trial judge to charge, as requested, that there was no evidence whatever to show that any other instruments were used. This clause of the request being unsupported the entire request was vitiated and was properly refused.

In *State* v. *Reilly*, 89 *N. J. L.* 627, this court, speaking through Mr. Justice Parker (on *p.* 628), said: "Where a party asks for an instruction, which is partly good and partly

bad, it is proper to refuse it altogether. *Gardner* v. *State*, 55 *Id.* 17; *affirmed, Id.* 682; *Consolidated Traction Co.* v. *Chenoweth*, 58 *Id.* 416; *affirmed*, 61 *Id.* 554; *Dedrick* v. *Central Railroad Co.*, 74 *Id.* 424."

For the plaintiff in error it is further urged that harm and injustice were done him in permitting the witness Dr. Truesdell to be asked on his redirect examination by the state: "You are under indictment in this court jointly with Dr. Young for performing a criminal abortion on your wife, are you not?"

The witness was called by the state in rebuttal. The brevity of the testimony justifies its insertion here, and, because, it is to a certain degree explanatory why the question above recited was asked.

Direct examination by Mr. Mott:

"*Q.* Doctor, were you in your home from the time Dr. Young left until the undertaker arrived?

"*A.* I was.

"*Q.* What were you doing during that time?

"*A.* Why, the whole time that my mother was with me until she left for supper I was sitting in the front room—sitting in the Morris chair with my mother on the same chair, or in my lap, either of the two.

"*Q.* Who was in the house during that period?

"*A.* Mr. Fred Wolf and his mother and my mother and myself.

"*Q.* During that period did you go to the body of your wife and remove any of the organs from it in any way?

"*A.* Certainly not.

"*Q.* Do you know of any one doing it during that period?

"*A.* I don't know of any one doing it."

Cross-examination.

"*Q.* You are under indictment in this court?

"*A.* I am.

"*Q.* You have been promised, or your counsel has been promised, by the state if you testified in this case you will be relieved from that indictment, haven't you?

"*A.* I believe that is the understanding, is it not, Mr. Mott?

"*Q.* That is all."

·Redirect.

"*Q.* You are under indictment in this court jointly with Dr. Young for performing a·criminal abortion on your wife, are you not?

"*A.* Yes, sir.

"Mr. McCarter—I object as immaterial.

"The Court—That is proper."

First, it is to be observed that no objection was made to this question until the witness had answered it. The situation here is somewhat analogous to that which was before this court in *Clark* v. *State,* 47 *N. J. L.* 556, and in which case Mr. Justice Reed, speaking for the court (on *p.* 558), said: "It does not appear that there was not an opportunity afforded to the counsel for the defendant to have made his objection earlier." In the case cited a motion was made to strike out the testimony, and this was held properly refused, whereas in the present case no such motion was made. Nor does it appear that the attention of the trial court was called to the circumstance now urged here that the witness had answered the question before counsel had an opportunity to interpose an objection. It is a matter of common experience in the trial of causes that a witness will occasionally answer a question before counsel, no matter how alert, can interpose an objection, but, when such is the case, the settled practice is for counsel to move the court at once to strike out the question and answer, and if refused, to take an exception. That course was not pursued in this case. Furthermore, the record shows that the objection to the question was rested upon the ground that it was immaterial and not upon the ground that it was incompetent. It is, therefore, manifest that the ground stated failed to apprise the trial judge of the viewpoint now taken by counsel for plaintiff in error that the unexpressed ground of his objection was really intended to challenge the competency ·of the question.

It is a salutary rule of practice, rigidly adhered to by the courts of this state, that before a party may avail himself, on an appeal, based upon bills of exceptions, of an error committed by a court, in the admission or rejection of testimony, it must appear from the record that the attention of the court was directed to the ground relied on. *Associates of the Jersey Co.* v. *Davison,* 29 *N. J. L.* 415; *Delaware, Lackawanna and Western Railroad Co.* v. *Dailey,* 37 *Id.* 526; *Packard* v. *Bergen Neck Railway Co.,* 54 *Id.* 553.

The record further shows that there was no exception taken, signed and sealed by the court. Hence, there was no foundation for any assignment of error challenging the propriety of the judge's ruling in allowing the question.

We have alluded to these matters for the purpose of making it plain to the bar that in criminal causes, brought up for review on strict writ of error, the old practice in relation to bills of exceptions and assignments of errors remains unchanged.

As this record is also up for review under section 136 of the Criminal Procedure act, and as one of the causes assigned for reversal is based upon the admission of the testimony which has been above discussed, under the assignment of error, a different legal rule becomes applicable, by virtue of section 136, whereby the competency of the question may be challenged, even though not excepted to in the trial court.

Under that section a twofold proposition presents itself here for decision. Was the question put to the witness competent, and, if so, was it harmful?

The latter inquiry we need not consider, because we have reached the conclusion that in the light of the evidence the question put to the witness was competent.

It was proper for counsel for defendant for the purpose of disclosing the interest of the witness to ask him whether he was not under indictment, and had been promised immunity from prosecution on that indictment, by the state, if he testified in the case on trial.

It is to be observed, however, that the question and answer do not disclose the nature of the indictment, and unexplained

might leave the transaction open to the inference that the testimony of the witness was given under the influence of a corrupt motive. The state was, therefore, strictly within its legal right on redirect examination of the witness to ascertain from him to what extent the indictment referred to was related to the offence for which the defendant was then on trial.

Another ground urged by counsel for plaintiff in error for reversal of the judgment is that the judge erred in its refusal to permit the defendant to give evidence as to what was said by him when he left the spool of thread with the prosecutor.

The defendant claimed that after the autopsy he sewed up the abdominal incision with cotton thread. This was one of the disputed facts in the case. Several weeks after the operation the defendant handed a spool of cotton thread to the prosecutor of the pleas and made some statement to him at the time regarding the thread.

On the trial counsel for defendant asked the counsel for the state to produce the spool of thread, which was done. Counsel for defendant then offered the spool of thread in evidence.

Counsel for defendant then offered to prove what the defendant said to the prosecutor of the pleas with reference to the thread when he handed it to him. The court refused to admit such proof and an exception was taken and sealed.

We think the proffered testimony was properly excluded. It was in the nature of a self-serving declaration.

A different legal rule would have been applicable if the state had offered the spool of thread in evidence for the purpose of incriminating the defendant, or as a part of the state's case. In that situation the defendant would undoubtedly have had the right to state under what circumstances he handed the thread to the counsel for the state and what was said on that occasion, for the purpose of meeting the effect of this part of the state's evidence. But that is not the case here. The defendant called for the production of the spool of thread and offered it in evidence in his own behalf, in order, presumably, to establish that the cotton thread with which he

sewed up the abdominal incision after the autopsy came from that spool and thus bearing out his contention that he used no other material. And that was as far as he could legally make use of that incident.

To adopt any different rule than that applied by the trial judge, in dealing with the proffered testimony, would be most vicious in its tendencies. It would open the door for the admission, not only of self-serving declarations, but to the most objectional kind of hearsay testimony.

We have examined the other specifications of causes argued before us and find them to be without merit.

Judgment will be affirmed.

_For affirmance_ — PARKER, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, JJ. 5.

_For reversal_ — THE CHANCELLOR, SWAYZE, BERGEN, MINTURN, JJ. 4.

Subsequent to the filing of the above opinion, a reargument of the case was ordered, which reargument was had on June 17th, 1919; and on November 17th, 1919, the following opinion was rendered:

SWAYZE, J. The facts in the case and the legal questions presented are set forth in the report in 103 _Atl. Rep._ 173. We need consider only one point. The defendant testified that he discovered that there was a dead fœtus in the womb and operated for its removal. The woman's body was disinterred and it was found that she had been eviscerated. The question was by whom, Dr. Young or the undertaker, or, perhaps, someone else. The husband, who was the chief witness for the state, was called in rebuttal and testified that he did not remove any of the organs from his wife's body. He then testified, in response to counsel for the defence, that he was under indictment, and, in effect, that he had been promised by the prosecutor that if he testified in this case for the state, he would be relieved from the indictment. Thereupon, on re-

direct examination, counsel for the state asked if he was under indictment jointly with Dr. Young for performing a criminal abortion on his wife, and he answered in the affirmative. As the record stands, his answer preceded the objection of defendant's counsel. Whether this is a true report of the order of events or not is questionable, since a stenographer can hardly be held to absolute accuracy in the order where objection and answer may come together, especially in the case of a biased witness. We assume in favor of the state that the answer came first. There is nothing, however, to indicate that counsel for the defendant delayed his objection for the purpose of speculating on the answer. Be that as it may, the trial judge treated the objection as timely and calling for a ruling, and he ruled "that is proper." This was judicial action within the rule of *State* v. *Hummer*, 81 *N. J. L.* 430, and brings the case within the purview of section 136 of the Criminal Procedure act as to the effect of the erroneous admission or rejection of testimony. That the admission of the testimony was erroneous is clear. The witness was not only permitted to testify to the contents of a public record, but also to the fact that the defendant had been charged with another crime from that for which he was on trial—a crime that had no tendency logically to prove the substantive case of the state. It can hardly be supposed that proof even of the crime of abortion, certainly not proof of an indictment, tends to prove negligence amounting to manslaughter in a surgical operation for a different purpose. It only proves that the state meant to have more than one chance for a conviction. The evidence bore only on the credibility of the defendant. A mere charge of crime cannot affect a witness' credibility, since, even if it take the solemn form of an indictment, the accused is presumed innocent. It has even been questioned whether a plea of *nolo contendere* to an indictment made the fact admissible as a conviction. *State* v. *Henson*, 66 *Id.* 601. All the argument in that case was wasted if the mere indictment was admissible for the same purpose. The matter is regulated by statute. *Comp. Stat.*, p. 2217, § 1. The statute provides that the conviction of

crime may be shown on the cross-examination or by the production of the record thereof. The admission of the testimony was in violation of every branch of the statutory rule. It was not proof of a conviction; it was not shown on cross-examination of the defendant, but on redirect examination of the state's own witness, whose credibility the state could not legally impeach; and what was shown was not by the production of the record but by parol testimony.

It is said the evidence was permissible in explanation of the supposed bias of the witness, to show to what extent the indictment was related to the offence for which the defendant was then on trial. But if this consideration justified an inquiry into the charge of the indictment, the inquiry should have been limited to the witness' relation to it. The defendant had asked only as to the indictment of the witness and the promise of immunity to him. It was not competent for the state on redirect examination to ask if the indictment was not jointly with the present defendant and was not for the crime of abortion. This question was so leading that the prosecutor virtually was the witness. No doubt, the question was so put for the very purpose of getting before the jury a suggestion which, however inadmissible as proof, might influence them in favor of the state.

It is said that the testimony was objected to only as immaterial, and that if immaterial it could not be harmful. This, however, overlooks the real question. By making objection, no matter on what ground, judicial action was called for; the judge was bound to rule correctly. Instead of holding the evidence to be immaterial, he held it to be material, for he said it was proper. If immaterial, it was not proper. The effect of the ruling was harmful, for it would have been futile for counsel for the defendant to move to strike out. He was not bound to move to strike out, but might properly acquiesce in the ruling, and rely on redress of the error in the appellate court.

It is, moreover, erroneous to say that immaterial evidence is necessarily harmless. Probably, it was harmless in the cases referred to. But evidence entirely immaterial to the

issue, which is what the objection means, may be very harmful. It would hardly be said that a man on trial for larceny could be proved guilty of murder and the error passed over if the objection was put solely on the ground of immateriality. The fact is, objection on the ground of immateriality has a double aspect. It may mean that the evidence is a mere waste of time; it may mean that it is irrelevant. Which is the proper meaning depends on the case. The judge, in the present case, evidently took the objection in the latter sense, since he ruled that it was proper. The ruling was erroneous on the further ground that the question was leading, and a striking instance of the harm that may be done by so objectionable a question. The ruling that the evidence was proper was an approval by the judge of a mere suggestion of guilt by the state without any proof, and must have been understood by the jury as meaning that it was of value as bearing on the present indictment, when in fact it was of no value, but was immaterial and irrelevant. That the defendant suffered manifest wrong and injury is obvious. The jury heard the judge say the testimony was proper. If the defendant was guilty of abortion, his testimony about a dead foetus, for which he was not responsible, was a lie, and his credibility was injuriously affected, if not destroyed. That the witness was, if there was in fact an indictment and the charge therein was true, an accomplice, and that he was state's evidence, only emphasizes the error of the court in ruling that the evidence was proper.

Let the judgment be reversed and the record remitted for a new trial.

KALISCH J. (dissenting). The conviction of the plaintiff in error, and the judgment pronounced thereon in the Essex Quarter Sessions, was affirmed in the Supreme Court. The case was brought from the latter court to this court for review which resulted in an affirmance by a divided vote. Application was made for a rehearing, which was granted. After a careful re-examination of the evidence in the case, and due consideration of the very able and learned argument of coun-

sel of plaintiff in error, I have not been able to find any valid reason which would justify me to recede from my former conclusion that the judgment should be affirmed. The prevailing opinion states that the defendant testified that he discovered that there was a dead fœtus in the womb and operated for its removal. But this statement, for the sake of accuracy, needs to be supplemented by an undisputed fact, that the defendant in performing the operation found neither a living nor a dead fœtus, and, hence, that he was grossly mistaken in his prognosis. The defendant further testified that in performing the operation he drew down sixteen inches of the intestines which he cut off and threw into a pail which stood beside him. It was discovered after the woman was disinterred that she had been eviscerated by some one. It was undisputed that the defendant was the person who performed the operation. Hence, there was no one who had as great an interest as he to remove any vestige of malpractice or a criminal attempt at abortion, if any such trace existed. The ground upon which the majority opinion reverses the judgment below is based upon the following circumstances:

Dr. Trusdell, a dentist, the husband of the deceased, was called by the state in rebuttal of certain testimony given by the defendant, which briefly stated, among other things, was that he did not go to the body of his wife and remove any of the organs from it and that he did not know of anyone who did. The cross-examination, by defendant's counsel, was as follows:

"*Q.* You are under indictment in this court?

"*A.* I am.

"*Q.* You have been promised, or your counsel has been promised, by the state, if you testified in this case you will be relieved from that indictment, haven't you?

"*A.* I believe that is the understanding, is it not, Mr. Mott? That is all."

Redirect.

"*Q.* You are under indictment in this court jointly with Dr. Young for performing a criminal abortion on your wife, are you not?

"*A*. Yes, sir.

"Mr. McCarter—I object as immaterial.

"The Court—That is proper."

For the defendant it is claimed that this testimony was illegally admitted. According to the settled law of this state a reversal is not justified for the improper admission or rejection of testimony unless it appears that timely objection was interposed and that there was a ruling of the court which was objected to and that the admission or rejection of the testimony was harmful to the defendant. *State* v. *Hummer*, 81 *N. J. L.* 430; *State* v. *Kubaszewski*, 86 *Id.* 250; *State* v. *Koettgen*, 89 *Id.* 678.

This court, in *State* v. *Hummer*, *supra*, construed the one hundred and thirty-sixth section of the Criminal Procedure act as follows: "That the phrase admission or rejection of testimony, imports judicial action, and a judgment will not be reversed for refusal of the trial court to strike out testimony elicited by a question to which no objection was made."

A plain reading of the record in the present case shows that there was no objection made to the question. It is suggested by the majority opinion that though it appears in the present case that the question was answered before any objection was made, it might have been a faulty recording by the stenographer of what took place, or the witness might have answered before counsel had an opportunity to object, but what warrant there is in the record for any such surmises is not pointed out, and cannot very well be. If the record before us contains an accurate account of what took place, and it was not suggested in the court below that it does not, then the very absence from the record of any fact or circumstance from which it could even be inferred that counsel was not afforded an opportunity to interpose an objection, raises a conclusive presumption that counsel had that opportunity but failed to avail himself of it.

The prevailing opinion proceeds upon the theory that the statement by the trial judge, "that is proper," after the question was answered by the witness, and an objection for the

first time had been interposed by counsel for defendant in these words: "I object as immaterial," was a ruling upon the admissibility of the question propounded, and within the scope of the decision of State *v.* Hummer. This is a marked and violent departure from the doctrine of the Hummer case and the cases following it. According to the decision in the Hummer case the prime question is, Was there an objection made to the question asked of the witness? The record here shows there was not. The majority opinion declares that counsel of defendant did not sit by and speculate as to what answer the witness might make. The record is dumb on this topic. Whence, therefore, comes such a presumption? Neither the facts nor the law of the case justify it. The question put to the witness called for an admission by him of an indictment existing against him charging him with a crime involving moral turpitude, which was developed for the first time on the redirect examination, and, hence, it is not an unreasonable supposition that counsel for defendant might have speculated upon the probability of the witness refusing to answer the question upon the ground that the answer tended to degrade or incriminate him. Or that, if the witness admitted he was indicted for the crime of abortion, it would tend to discredit his testimony. Moreover, if the witness confessed that he was jointly indicted with defendant for the commission of an unlawful act, which resulted in the death of the deceased, thereby constituting the crime of manslaughter, the status of the witness would be that of an accomplice which would practically make his testimony valueless against the defendant, unless corroborated in material points, and therefore the question was helpful to the defendant's defence. There was occasion for counsel to speculate on the answer the witness might make, and the fact that he did not object until after the question was answered, and then only upon the ground it was immaterial, leads me to the conclusion that counsel must be held to have waited to see what the answer would be before raising any objection. But it is said that the court treated the objection as timely and calling for a ruling and he ruled "that is

proper." But that can hardly be so. There was no question pending to be ruled upon by the court. The question had been answered by the witness without objection. It is an unwarrantable assumption, in view of the sequence of events as disclosed by the record, that the remark of the judge after the question had been answered, indicated that he treated the objection of immateriality of the question put to the witness, as if made in time, for, in the first place, when the objection was made there was no question pending which called for an answer, and, therefore, the situation was one that did not permit any ruling; and, in the second place, the remark made by the judge was, manifestly, mere comment on the statement made by counsel for defendant that the question was immaterial. If counsel for defendant had been surprised by the witness answering the question before counsel had had an opportunity to object, his great skill and knowledge in the trial of causes would have prompted him at once to have applied to the judge to strike out the answer of the witness so that he could interpose his objection. This he did not do. So, when counsel said, "I object as immaterial," he could not have meant anything else than that it was immaterial whether or not the defendant was jointly indicted with the witness for a criminal abortion. Suppose the trial judge had remained silent, or even acquiesced in counsel's objection that the testimony was immaterial, what warrant is there for an assumption that this was tantamount to a ruling upon the rejection or admission of the question which had already been answered?

Accepting the construction of this court in the prevailing opinion that the trial judge by his statement "that is proper" ruled that the question was material, it cannot affect the logic of the situation as it exists here. Testimony may be material and relevant and yet be incompetent. In the present case, no objection was made that the question was incompetent, and, therefore, the court was not called upon to make a ruling in that regard. In order for the defendant to avail himself of any legal error, the record must show that the judicial action of the court on the *admissibility* of the question was

promptly invoked, and, as it clearly appears, that this was not done, it is too late to do it here.

In *State* v. *Hummer, 73 N. J. L.* 714, Mr. Justice Garrison, speaking for this court (at *p.* 717), says: "It does not appear that there was not an opportunity afforded to the counsel for the defendant to have made his objection earlier. The rule is established that counsel cannot take the chance of testimony-making in his favor, and if it happens to be adverse then interpose his objection. There is nothing to show that the defence here was not apprised of the point upon which the witness was about to speak before his testimony relative to the sale to himself was delivered. The testimony being so in without objection, it cannot be said that the court erred in not striking it out."

The prevailing opinion inferentially concedes that the testimony was material. The ground of objection was that it was immaterial. The trial judge ruled that it was material. The majority opinion says that it was incompetent. There was no objection interposed upon that ground. It is said that the judge was bound to rule correctly. This he did when he did not accede to the proposition of counsel that the question was immaterial. The record does not show any objection to the question upon the ground of incompetency. The question was material and competent for a certain purpose only. The defendant brought out new matter when he asked the witness whether there was not an indictment pending against him from which he was to be relieved if he testified for the state. It is to be observed that there is nothing in the question or answer to indicate the nature of the indictment— whether it was a trivial misdemeanor or for the grave offence of murder. As the state was charged by defendant with having made a bargain with the witness, of which the indictment was the consideration, it was perfectly proper for the state to ascertain what the nature of the consideration was. It is clear that the testimony was introduced by the defendant for the purpose of establishing that the witness had an improper motive to testify and had a bias against the defendant as a result of a promise by the state, of immunity from

prosecution under the indictment referred to. Now, it is apparent that it was a matter of considerable importance in determining the extent of the corrupting influence, if any, exercised on the witness to ascertain whether the indictment was for a trivial offence involving a money penalty only upon conviction, or for an offence involving imprisonment in the state prison. The witness could, therefore, be properly asked of what crime he stood indicted. And in order to show that he had no bias against the defendant on that account could very properly testify that the defendant was jointly indicted with him. For the state it might be said that both the witness and defendant were mutually interested in the outcome of the indictment, and that, therefore, the release of the witness from prosecution under it would not in its nature tend to create any feeling of prejudice and induce the witness to testify falsely. On the other hand, it could be reasonably argued that the fact the witness and defendant were jointly indicted, and the witness promised immunity from prosecuting converted the attitude of the mind of the witness into hostility toward the defendant. It seems to me, therefore, that not only was the question competent for the purpose indicated, but even if it was incompetent, it was calculated to help the defendant to establish that the witness was hostile, which fact was beneficial to defendant instead of harmful. The defendant introduced the testimony to establish bias on part of the witness and he cannot be heard to complain that testimony on the part of the state, tending to enforce the charge of bias, was illegally admitted. The claim that the defendant was harmed by the question does not appear. If counsel thought the question might harm the defendant in some other aspect of the case, he was entitled to request the court to limit the application of the testimony to the bias of the witness and to disregard it as bearing upon the guilt or innocence of the defendant.

In this regard, what Chief Justice Gummere said in *State v. Hummer*, 72 *N. J. L.* 328 (at *p.* 330), is apt: "The protection of the defendant against such a result was to request the court to instruct the jury as to the limitations of the evi-

dence, and of the purposes for which it alone could be considered by them."

It is a matter of common legal experience that testimony may be competent for one purpose and incompetent for another. But this never shuts out the admission of the testimony because it may be harmful. As was said by the learned Chief Justice, the defendant can protect himself against such a result by asking the court to limit the testimony to the purpose for which it is competent. It is said that it was not competent to make proof of the indictment in the way it was done. Counsel for defendant brought out the fact that there was such an indictment. No objection was made to the competency of the manner of proof to establish the existence of the indictment. It may be properly said that, so far as that is concerned, the testimony went in by tacit consent.

We have heretofore strictly adhered to a compliance with the statutory rule not to reverse a judgment unless the error complained of prejudiced the defendant in his defence upon the merits of the case, and I do not see any good reason for a relaxation of this statutory mandate in the present case. I therefore vote to affirm the judgment.

*For affirmance*—PARKER, KALISCH, HEPPENHEIMER, WILLIAMS, JJ. 4.

*For reversal*—THE CHANCELLOR, SWAYZE, BERGEN, MINTURN, WHITE, TAYLOR, GARDNER, ACKERSON, JJ. 8.