Statement of the Case.
NICI-IOLLS, J.
The case was before this court under circumstances which will be *749 found stated in the printed report of the same in 120 La. 434, 45 South. 382. By judgment of this court the action of the trial court, after it had granted a new trial, in permitting the defendant, who had been convicted of murder, to withdraw his plea of “not guilty” and enter a plea of “guilty of manslaughter,” and on said plea sentencing him to serve six years at hard labor in the penitentiary, was set aside, and also the verdict and sentence, and the cause remanded for further proceedings according to law.
The cause having been reinstated in the district court, defendant was placed on trial again. The second trial resulted in the jury returning a verdict of guilty of manslaughter. The court thereupon sentenced him to imprisonment in the state penitentiary for five years.
Defendant appeals from the verdict of the jury and the judgment of the court thereon.
We find three bills of exceptions in the record. The third is to the refusal of the court to grant a new trial. The grounds upon which the new trial was asked for were:
“(1) That the verdict was contrary to the law and the evidence.
“(2) That, pending- its deliberations, the jury was permitted to read newspapers containing accounts and reports of the trial, and of the evidence adduced, which accounts and reports of the trial and of the evidence adduced were inaccurate and prejudicial to the accused.
“(3) That one of the jurors who tried defendant was incompetent to serve on the jury by-reason of nonresidence.”
The bill recites: That on the 26th da-y of the month of May, 1909, the said motion for a new trial was tried, and all the testimony introduced on the trial thereof was reduced to writing, and a certified copy thereof is attached hereto and made a part of this bill of exceptions.
That the court overruled the said motion for a new trial, and to the court’s ’ ruling-counsel for defendant excepted, and now tenders this bill of exceptions for signature. The court, in signing the bill, stated that his reasons for refusing the new trial were set forth at the foot of the stenographer’s report of the testimony taken on the trial of the motion for a new trial annexed.
In the second bill, after reciting that defendant had applied for a new trial and stating the ground thereof, and that it had been overruled, defendant averred that on the trial of said motion S. P. Lacour, the juror whose incompetency to serve was made one of the grounds for a new trial, was placed on the stand as a witness by defendant in support of the allegation that, when selected on the jury, he had not previously been a resident for one year in the parish of Pointe C'oupee, as required by law; that S. P. Lacour was the only witness obtainable by whom defendant could prove the exact date of his removal to and acquisition of a domicile in the parish of Pointe Coupee; that, if allowed to testify, said Lacour would have sworn that for several years he had resided in the parish of Avoyelles, at the town of Plaucheville, where he was engaged in business as a merchant; that on April 20, 190S, he had visited the parish of Pointe Coupee, with the view of making arrangements to locate at the town of Batchelor, in said parish ; but that he did not permanently locate in the parish of Ppinte Coupee and acquire a domicile there until the month of July, 1909.
That, when placed upon the stand, said S. P. Lacour was asked the following question by counsel for defendant:
“When did you bring your family to Pointe Coupee? You lived in Avoyelles, prior to moving to Pointe Coupee, did’nt you?”
To this question the district attorney objected. The court sustained the objection. 'To the court’s ruling counsel for defendant' excepted and tendered his bill of exception ,to the court.
The judge signed the bill of exception, as *751 signing as reasons for his ruling that the juror, S. P. Lacour, when examined on his voir dire, had testified positively that he had been a resident of the parish of Pointe Coupee from the 20th day of April, 1909, and that he could not now be heard to contradict said testimony, and that as a juror he could not be heard to give testimony which would tend to impeach the verdict of the jury on which he had served.
The first bill of exception recites that on the trial of the case the state placed on the stand Dr. E. W. Singletary, who testified that, four or five days previous to the killing of the deceased, Bouis, he had sent a message to said Bouis by Mary Jane Bradford, a negro woman, telling said Bouis to call and see him, and Mary Jane Bradford having testified that she had delivered said message to said Bouis on a Saturday, and that said Bouis had come to Morganza, the scene of the killing, on the Monday following ; the purpose of said evidence as announced by the state being to show that said Bouis had come to Morganza on a peaceful mission.
R. M. Scott, a witness for the state, who was at that time agent of the railroad at Morganza, was asked the following questions, to which he made the following answers:
“Q. You remember the day Bouis was killed?
“A. Well, I don’t remember the exact date. I remember about the time, about 2% years ago.
“Q. It is alleged in the indictment in March, 1907?
“A. Something like that.
“Q. You were in charge of the depot at Morganza then?
“A. Yes, sir.
“Q. Wish you would state whether or not you saw George Bouis on that day?
“A. Yes, sir; some time in the afternoon, down around 4 or 5 o’clock, he came into the office and delivered a package for shipment by express.
“Q. Do you know who the package was being expressed to?”
To which question the defense objected, on the ground that the testimony sought to be adduced was immaterial and irrelevant, and could have no bearing on the question of whether or not Bouis’ mission in Morganza was peaceful, the state having already shown by several witnesses that he had come there in obedience to a summon by Dr. -Singletary ; further, that the question asked and the answer sought to be elicited were damaging to the accused, being calculated, to prejudice the minds of the jury against him; that the contents of the package and the purpose for which it was being expressed, the person to whom and the person by whom said package was being expressed,, could possibly have no bearing on the real issue involved in the case.
Which objection was overruled by the court, and the question permitted to be answered.
To which ruling of the court defendant excepted, and now tenders the present bill of exception for signature. This bill was submitted to the acting district attorney, who. adds the following statement before signing:
“The evidence of witness R. M. Scott, like that of witness'Dr. E. W. Singletary, was extremely material and relevant, and had a very important bearing of the case; both showuii that the deceased, Bouis, came to the town of' Morganza, and the scene of the killing on business errands and a peaceful mission — to the depot at Morganza, a few hundred feet from where he was killed, and where R. M. Scott was agent, to deliver an express package for the wife of his employer, after which he immediately drove to Dr. Singletary’s drug store-(where he was killed) in response to the message delivered him by Mary Jane Bradford from Dr. Singletary to call to see him on business.
“The prosecution has no recollection that the-inquiry of witness Scott touched on the contents of the express package, nor the purpose-for which it was expressed, nor does the note-of testimony recited in the bill disclose such, testimony; but, as we know outside the record that the package contained dry goods which were-being returned by Mrs. Chas. Dawson, the wife-of the employer of deceased, to a dry goods-establishment in Baton Rouge, we fail to see: how the contents of the package, or to who it was being expressed, or the purpose for which it was expressed, could damage defendant, orín any way prejudice the jury against him.. The object of the inquiry was limited to show, and it showed, this and nothing else: That deceased was in Morganza, at the depot, on a *753 business mission for those who employed him, and a few moments later was in front _ of Dr. Singletary’s drug store (where he was killed by defendant) in response to a message from that gentleman to call at his place of business, as he wanted to see him.”
Opinion.
There is no force in the complaint made in the first bill of exception. We fail to see wherein defendant was injured by the action of the court. The sole object of the question was to show that at the time of the homicide deceased was not seeking a difficulty, but was on a peaceful mission to Morganza, and to account for his being at that place. In State v. Rideau, 116 La. 246, 40 South. 691, it was 'held that evidence to show the motive with which deceased was entering the room where he was shot was admissible, and that facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, were admissible. An objection of irrelevancy is regarded as the weakest of all objections. State v. Fontenot, 48 La. Ann. 307, 19 South. 111; State v. Primeaux, 104 La. 365, 29 South. 110.
The second and third bills can be disposed of together.
The first complaint made in the motion for a new trial was that the verdict was contrary to the law and the evidence. That ground of complaint calls for no particular discussion. Marr’s Criminal Jurisprudence, p. 843; State v. Nelson, 3 La. Ann. 497; State v. Crawford, 32 La. Ann. 526; State v. Hauser, 112 La. 313, 36 South. 396; State v. Apfel, ante, p. 649, 50 South. 613.
The second ground, that the jury was permitted to read newspapers containing accounts and reports of the trial and of the evidence adduced which were inaccurate and prejudicial to the accused, is not only not sustained, but is disproved, by the evidence. The third ground, that Lacour, one of thdjury, was incompetent by reason of non-residence, is also not sustained by the evi dence. The defense placed Lacour himself on the stand to establish that fact; but the-court refused to allow him to give evidence-on the subject. The judge declares with reference to the incompetency of this juror:.
“That Mr. Lacour was examined on his voir dire, and ample opportunity was given to the-defense. After the court questioned him, he-could have been examined further by either side. The court would have granted the fullest investigation. It was to the knowledge of the-judge himself that Mr. Lacour had been an old resident of Pointe Coupee; that he moved' from Pointe Coupee to Avoyelles. Mr. Lacour testified he had come back some time in April. When pushed to fix the time, he fixed it definitely on the 20th of April — not later than the 20th of April. He came back to Pointe Coupeewith the intention of remaining there. No testimony was adduced to disprove that fact. The testimony of Mr. Landau and others did not disprove that fact.”
The testimony referred to by the judge went no further than testifying as to when they had seen him at the particular place in Pointe Coupee where his store was opened. The court committed no error in refusing to-permit Mr. Lacour to testify.
The objections urged to his doing so were well grounded. Jurymen are not permitted to impeach their own verdict. State v. Comeau, 48 La. Ann. 249, 19 South. 130; State v. Richmond, 42 La. Ann. 299, 7 South. 459; State v. Price, 37 La. Ann. 218; State v. McCarthy, 44 La. Ann. 323, 10 South. 673; State v. Nash, 45 La. Ann. 1141, 1145, 13 South. 732, 734.
We find no reason for setting aside the' verdict and judgment. They are hereby affirmed.
PROVOSTY, J., recused.