(112 So. 486)

No. 28451.

## STATE v. CIACCIO.

March 28, 1927. Rehearing Denied April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. **Witnesses ☞37(4)—Objection to testimony whether defendant's reputation was good or bad, by witnesses who never heard his reputation discussed, held properly sustained.**

In prosecution for murder where witnesses testified that they had never heard defendant's reputation discussed in community, it was proper to sustain state's objection to witnesses testifying affirmatively whether defendant's reputation for peace and quiet was good or bad.

2. **Criminal law ☞379—Want of discussion of accused's reputation in community is admissible as evidence of his good character.**

That reputation of accused has never been discussed in community, in which he has been living, is evidence of good character and may go to jury.

3. **Criminal law ☞450—Jury, not witness, may draw inference of good character from testimony that witness did not hear accused's reputation discussed in community.**

Inference of good character from fact that accused's reputation has never been discussed

in community is for jury, and witness testifying that he heard no discussion of accused's reputation cannot draw own inference from such fact.

4. **Criminal law ☞755½, 829(8)—Requested charge that testimony of not hearing defendant's reputation discussed is proof of good reputation held properly refused as commenting on facts and otherwise covered (Rev. St. 1870, § 991).**

Where witnesses for defense testified that they had never heard defendant's reputation questioned, requested charge that such testimony is proof of defendant's good reputation was properly refused as commenting on facts prohibited by Rev. St. 1870, § 991, and as covered by general charge that testimony might be considered as evidence of good reputation.

5. **Criminal law ☞801—Piecemeal delivery of charge in connection with introduction of evidence cannot be required of judge.**

District judge cannot be compelled to deliver his charge by piecemeal and pari passu with introduction of evidence in trial of criminal case.

6. **Criminal law ☞368(3)—Evidence that deceased's wife was seen carrying heavy object from scene of homicide, alleged to have been pistol, held properly excluded as not part of res gestæ and confusing.**

In prosecution for murder of deceased while removing line fence in dispute, evidence showing that deceased's wife was observed carrying heavy object, alleged to have been a pistol, concealed under her apron, after returning from scene of homicide and hid object under mattress of bed, *held* properly excluded as not forming part of res gestæ and as confusing issues.

7. **Homicide ☞116(1)—Possession of pistol, if proved, by deceased, killed while removing disputed line fence, would not have justified killing.**

In prosecution for murder of deceased while removing disputed line fence, fact that deceased had pistol concealed on his person at time of homicide, if proved, would not have justified killing.

8. **Homicide ☞124—Requested charge that trespass on realty or destruction of personalty justifies killing trespasser, if reasonably necessary to protect property, held properly refused (Rev. St. 1870, § 818, as amended by Act No. 85 of 1890).**

In prosecution for murder of deceased while removing line fence in dispute, requested in-

structions that trespass on realty or destruction of movable property, belonging to another, justifies killing of trespasser, if, in judgment of reasonable man, resort to such force is necessary to protect property, *held* properly refused; Rev. St. 1870, § 818, as amended by Act No. 85 of 1890, protecting owner against willful or malicious trespass by punishing trespasser.

9. **Criminal law** ⊚⟶829(5)—**Requested special charge on self-defense, covered by court's general charge, held properly refused.**

Requested special charge on law of self-defense, in prosecution for murder, *held* properly refused as fully covered in court's general charge.

10. **Homicide** ⊚⟶116(4)—**Homicide is not justified merely because accused believed himself in danger.**

In prosecution for murder of deceased while removing line fence in dispute, requested special charge construed as justifying homicide, if accused believed himself to be in danger, *held* properly refused as erroneous.

11. **Homicide** ⊚⟶116(4)—**Homicide, to be justified, requires showing that defendant was in danger of losing life, or receiving great bodily harm, under circumstances showing reasonable grounds for such belief.**

In prosecution for murder of deceased while removing line fence in dispute, homicide, to be justified, requires showing that life of defendant was in danger, or that his person was in danger of receiving great bodily harm, under circumstances leading reasonable man to such conclusion.

12. **Criminal law** ⊚⟶1144(14)—**Refusal of special charge stated by trial judge in bill of exception to be covered by general charge not reduced to writing held presumably proper.**

Where trial judge stated in bill of exception that requested special charge on burden of proof was fully covered in general charge, and general charge was not reduced to writing or taken down by stenographer, refusal of special charge was proper; it being presumed that judge correctly charged the law.

13. **Homicide** ⊚⟶116(5)—**Charge on self-defense, requiring assault affording reasonable grounds for belief that defendant was in danger of losing life or suffering great bodily injury, held not erroneous.**

In prosecution for murder of deceased while removing line fence in dispute, charge on law of self-defense, requiring an assault affording reasonable grounds for belief that assailant was about to take defendant's life or do him great bodily injury, was not error.

14. **Witnesses** ⊚⟶240(4), 245—**Questions to accused as to deceased's movements held properly excluded as leading and already covered.**

In prosecution for murder of deceased while removing line fence in dispute, questions to accused whether deceased went to his house before he came to scene of homicide *held* properly excluded as leading and suggestive, and as already shown by other testimony.

Appeal from Twenty-First Judicial District Court, Parish of Tangipahoa; Columbus Reid, Judge.

Tony Ciaccio was convicted of manslaughter, and he appeals. Affirmed.

Amos L. Ponder and Hypolite Mixon, both of Amite, and Wm. A. Houghton, of Independence, for appellant.

Percy Saint, Atty. Gen., A. L. Ponder, Jr., Dist. Atty., of Amite, and E. R. Schowalter, Asst. Atty. Gen. (S. S. Reid, of Amite, of counsel), for the State.

LAND, J. Defendant was found guilty of manslaughter under an indictment for the murder of Gasparo Laciura, and was sentenced to imprisonment in the state penitentiary for a term of not less than 12 nor more than 18 years.

He has appealed and seeks a new trial for alleged errors set forth in numerous bills of exception.

### Bills Nos. 1, 2, 3, 4, 5, 6, and 7.

[1] Witnesses for defendant were asked, on direct examination, if they were acquainted with his reputation, and stated that they had known defendant a number of years, that he was a good man, but that they had never heard his reputation discussed.

The state objected to the witnesses testifying affirmatively upon this state of facts, whether the reputation of defendant for peace and quiet was good or bad. This objection was sustained by the court, and the ruling, in our opinion, was correct.

[2, 3] While it is true that the fact that the reputation of one accused has never been discussed in the community, in which he has been living, is evidence of good character, and may go to the jury, yet it is for the jury to draw the inference of good character from that fact, and not for the witness to say what his own inference from it is, although he may be allowed to testify that he has heard no discussion of the reputation of the accused. A witness is not in a position to testify affirmatively to the reputation of the accused unless he has heard it discussed.

As accused was not denied the right to show that his reputation had never been discussed in the community in which he lived, he is without just cause of complaint as to the ruling of the trial judge. State v. Warren, 138 La. 361, 70 So. 326; State v. Blassengame, 132 La. 262, 61 So. 219; Chamberlayne on Ev. § 3312 et seq.; Wigmore on Ev. § 1980 et seq.; People v. Van Gaasbeck, 189 N. Y. 408, 82 N. E. 718, 22 L. R. A. (N. S.) 650, 12 Ann. Cas. 745.

[4] The witnesses for the defense having answered that they had never heard the reputation of the defendant questioned by any one, counsel for defendant requested the court to charge the jury, then and there, "that the fact that they never heard this man's reputation discussed is proof, ipso facto, of the good reputation of the defendant."

The judge a quo properly refused to give the charge requested for two reasons. In the first place, the charge was a comment on the facts, in that it required the court to give its opinion that good reputation had been proven. R. S. 1870, § 991. In the second place, the trial judge instructed the jury in his general charge "that evidence that a man's reputation was not discussed might ·be considered as evidence of good reputation."

[5] A district judge cannot be compelled to deliver his charge by piecemeal and pari passu with the introduction of the evidence in the trial of a criminal case.

### Bill No. 8.

[6] Counsel for defendant attempted to prove by several witnesses that the wife of deceased was the first person to reach his body, and that she took a pistol from the body. This evidence was excluded as not forming a part of the res gestæ, and as calculated to confuse the issues in the minds of the jury.

Defendant and deceased owned adjoining properties. Deceased was killed in the field at a point where defendant was building a fence on a line, which was in dispute between the respective parties. Defendant, when arrested, stated that he had killed deceased because he was pulling up defendant's fence post. The evidence of the only two eyewitnesses was that deceased had stooped down with his arms around a post, and was in the act of pulling it out of the ground at the time of the killing. No weapon was found on the body of the deceased. After striking deceased while he was engaged in removing the post, defendant continued his furious attack with a hammer, until he had crushed portions of the skull completely and severed them from the head. When the two eyewitnesses attempted to interfere, defendant threatened them so violently as to drive them away.

Even had a pistol been removed from the body of deceased after the fatal blow had been struck and the difficulty had ended, it could not be seriously argued that such fact constituted a part of the res gestæ. Nor can it be successfully contended that the evidence tendered in this case, if not a part of the res gestæ, was offered to establish a substantial fact, and that defendant was entitled to its admission.

The evidence excluded does not show that the wife of deceased removed any pistol or other weapon from the body of her husband.

None of the witnesses pretend to testify that she did so, although she was the first person to reach the body. Taken as a whole and at best, the evidence not admitted merely shows that when the wife of deceased was returning from the scene of the homicide she was observed to have a heavy object concealed under her apron, and that, on arriving at the house of deceased, she deposited this object between the mattresses of a bed in a room adjoining that in which her husband had been placed.

Not one of the witnesses for the defense swears that the concealed object was a pistol, but merely conjectures that it was. No one saw the object after its removal from the apron.

We are not advised in any bill of exception or by any evidence in the case that defendant was assaulted with a pistol by deceased, or that there was any overt act or hostile demonstration upon the part of the deceased at the time of the killing other than the trespass committed by him on the real estate claimed by defendant, who admits that he killed the deceased while in the act of removing a fence post from the disputed line.

[7] Even if defendant had had a pistol concealed on his person at the time of the homicide, this fact would not have justified the slaying of the deceased, under the state of facts disclosed by the record.

The ruling of the trial judge was correct and is approved.

### Bills Nos. 9, 12, and 13.

These bills were reserved to the refusal of the court to charge the following special instructions to the jury:

"No. 1. I charge you, gentlemen of the jury, that a man has a right to defend himself, his family, or his property, but he must not use any more force than is necessary for the protection of himself, or his family, or any more force than would appear to him reasonable under the circumstances, and under the conditions surrounding the difficulty."

"Charge No. 4. I charge you, gentlemen of the jury, that a man has a right to protect his property against one or more where it is attempted to be destroyed or controlled, and that no person has the right to destroy another's property, and when he uses reasonable means to cause such person to desist from such destruction, and the party failed to desist, the owner of the property has a right to protect it with all the force that is necessary or that might appear reasonably necessary to a reasonable man under the circumstances, and, if you find from the evidence that this defendant was protecting his property from destruction, and slew his adversary, and if you find that he used only so much force as was necessary to protect that property and no more, or if you have a reasonable doubt, it is your sworn duty to find the accused not guilty."

"Charge No. 6. I charge you, gentlemen of the jury, that a man does not have to stand idly by and see his property destroyed by another in his presence; it is his duty to order the destroyer to desist, and if he does not desist, he has a right to use force to stop such destruction, and has a right to use force to protect his property, but he has no right to use more force than seems reasonably necessary, and the jury are the exclusive judges of such fact."

[8] The basic idea of these three special charges is that trespass upon real estate, or the destruction of movable property belonging to another, justifies the killing of the trespasser, if, in the judgment of a reasonable man, resort to such extreme force may be necessary to protect the property, movable or immovable.

This is not the law of this state.

Revised Statutes of 1870, section 818, as amended by Act 85 of 1890, affords ample protection to the owner against any trespasser who may willfully or maliciously impair or destroy the fence around or protecting the field belonging to any person. On conviction, the penalty is a fine of not less than $50 nor more than $1,000, or imprisonment not less than 10 days nor more than 6 months, or both, at the discretion of the court.

"A bare trespass against or upon the real property of another, not his dwelling, does not

warrant the owner in using a deadly weapon in its defense, and, if he does and kills the trespasser, it is murder, though the killing is actually necessary to prevent the trespass. Thus a homicide, committed with a deadly weapon in order to prevent the removal of a line fence in dispute, is murder in the absence of proof that would tend to rebut the presumption of malice arising from the use of such weapon. * * * A person in possession of realty, however, is justified in using all necessary force to defend his possession and eject trespassers, though his purpose in using force must be to put the trespasser off, and not to do him great bodily harm." Wharton on Homicide (3d Ed.) p. 786, § 528.

The special charges are erroneous and were properly refused.

### Bill No. 10.

The trial judge refused to charge the following special charge on the law of self-defense:

"I charge you, gentlemen of the jury, that a man, when assaulted, has a right to stand and defend himself, and he has a right to act upon the appearances of danger as they would reasonably *appear to him* under the stress of the difficulty, and you must view it from the standpoint of the defendant, and not from your own deliberate judgment while sitting in the jury. In other words, place yourself in as near the position of the defendant as you possibly can and view it from his standpoint, as would reasonably appear to a reasonable man under all the circumstances, taking into consideration the relative size, the relative strength of the parties to the difficulty, and if you find from the evidence that the deceased assaulted the defendant, and that defendant used only so much force as was necessary to protect his life, or to protect him from some great bodily harm, and he slew his adversary, it would be excusable under the law, and it is your duty to acquit him."

[9] The reason for the refusal of the special charge given by the judge a quo is that the law of self-defense was fully covered in his general charge. We find this to be the case.

[10] If the special charge may be construed as stating the law of self-defense to be that it is sufficient, to justify the homicide, if the accused merely believed himself to be in danger, then such charge is erroneous.

[11] To justify the killing, it must appear that the life of the accused was in danger, or that his person was in danger of receiving great bodily harm, and the circumstances must be such as would lead a reasonable person to that conclusion. There should exist a reasonable appearance of danger which the accused must have believed, and it is not enough that he should merely have believed himself to be in danger, but the circumstances must have been such that the jury can say that these circumstances gave reasonable ground for such belief. State v. Simon, 131 La. 520, 59 So. 975.

### Bill No. 11.

[12] The trial judge states in the per curiam to this bill that the special charge as to the burden of proof when self-defense is pleaded was covered fully in the general charge and practically in the same language.

The general charge was not reduced to writing, and the portion covering the special charge requested was not taken down by the stenographer.

The refusal of the special charge, under the circumstances, was proper. It must be presumed that the lower judge charged the law correctly.

### Bill No. 14.

This bill is reserved to the portion of the judge's charge relative to the protection of property and the prevention of the destruction of property by a trespasser.

We find no error in the charge, which is in line with the law already cited in this opinion under bills Nos. 9, 12, and 13.

[13] As the court did not charge that the law of self-defense requires an actual physical assault, as is also complained by defendant under this bill, but that there must be an assault or hostile demonstration of such nature as to afford reasonable grounds for the belief that one's assailant is about to take his life or do him great bodily injury, we

find no error in the charge to the jury on this branch of the case.

### Bill No. 15.

[14] This bill was reserved to the ruling of the trial judge in holding that the following questions, propounded by counsel for the defense to the accused through an interpreter, were leading and suggestive, and assumed a condition of facts not testified to by the defendant:

"Q. Ask him if Gasparo Laciura (deceased) went to his house before he came down there?

"Q. Ask him where Gasparo Laciura (deceased) went before he came to where he was at work on the fence?"

The witnesses had been put under the rule.

It appears from the testimony of the defendant that he was engaged in building a fence, and that deceased was working in the field near by. Defendant states that deceased came of his own accord where defendant was at work and was not sent for by defendant.

Defendant had not testified, prior to the questions objected to by the state, that deceased had left the field and had gone elsewhere, before he arrived at the place of the difficulty.

The first question clearly suggests that the deceased first went to his house, and assumes as a fact that he then repaired to the spot where defendant was at work.

The second question assumes as a fact that deceased came to the fence where defendant was at work, and suggests that deceased left the field and had gone to some place before doing so. The ruling in sustaining the objection to these questions was correct.

Moreover, the facts attempted to be proved by defendant were already before the jury through the testimony of other witnesses. It clearly appears from the record that deceased left the field, went to his house, and then repaired to the scene of the difficulty. Transcript, 26, 27.

Defendant's counsel was not prevented by the ruling of the court from arguing to the jury that the purpose of deceased in going to his house was to arm himself with a pistol prior to the difficulty.

### Bill No. 16.

The motion for a new trial is made on the ground that the verdict is contrary to the law and the evidence, and reiterates the errors already assigned and reviewed.

In overruling the motion for new trial, the trial judge comments on the leniency of the jury in returning a verdict for manslaughter, and declares that, in arriving at such a verdict, they must have given the accused the benefit of every conceivable extenuating circumstance.

The only questions of law presented by the motion for new trial have been disposed of already in this opinion.

The conviction and sentence appealed from are affirmed.

O'NIELL, C. J. I concur in the decree rendered in this case. The testimony referred to in bill No. 8 was heard by the judge out of the presence of the jury and was reduced to writing. None of the three witnesses testified, or could have known, that the wife of the deceased had a pistol or other weapon concealed under her apron. Their supposition in that respect was not founded upon actual knowledge and was not admissible as evidence. I do not understand why the judge sustained the objection to the questions referred to in bill No. 15, but the matter was not argued either orally or in the printed brief filed for the appellant, and I assume that the complaint is abandoned or admitted to be not well founded.