ROGERS, Justice.
 

 William. Meharg, William Landers, William Heard, and Floyd Boyce were convicted of the murder of Frank C. Gartman and sentenced to death. They took this appeal, relying on two complaints to obtain a reversal of their conviction and sentences.
 

 A brief statement of the facts will be helpful to understand the legal propositions involved in appellants’ complaints.
 

 In the early part of September, 1940, a general prison break occurred at the Arkansas Penitentiary, when thirty-five or forty prisoners escaped. Six of the escaped convicts, including the four defendants in this case, made their way into Louisiana. On the afternoon of September 2, 1940, in the Town of Rayville, they kidnapped two girls and a boy ranging in age from 16 to 19 years, and commandeered their automobile. Taking the three young persons with them, they drove the automobile until the following night when, at a point within approximately two miles of the Town.of Columbia, in the Parish of Caldwell, a casing on the automobile went flat and they stopped to repair it. Meanwhile notice of the kidnapping had been sent to the sheriff of the Parish of Caldwell, among others, and he had his deputies patrolling the roads of the parish over which he thought the convicts might be traveling. While the kidnappers were repairing the casing on the stolen automobile, a deputy sheriff of Caldwell Parish, named Jones, passed the party and observing that the license number on the automobile corresponded with the .license number of the stolen car, he repaired to Colum
 
 *751
 
 bia to obtain assistance for the purpose of making the arrest. Together with other deputies, among whom was Mr. Gartman, Jones returned to the spot where the stolen car was parked, and after driving some distance beyond that spot, they left their car, returned in the darkness, and assumed positions at different points near the stolen car. The road at the spot where the stolen car was parked is bordered on one side by the river levee and on the other side by a fence which encloses a pecan orchard. Jones, with another deputy, came up on the river side of the levee to a point opposite to and approximately 60 feet from the stolen car, and Gartman and another deputy took a position behind a pecan tree located about 40 feet from the car and between the road and the levee. The remaining two deputies posted themselves behind a second pecan tree located about 60 yards from the stolen car at a place which was also between the road and the levee. After Jones and his companion deputy had established themselves in the place above described, another car passed by and, availing himself of the light cast by the lamps of the passing car, Jones fired at the stolen car puncturing the car and its casings in several places. Several shots were then fired from the stolen car in the darkness and apparently in the general direction of the spot where Jones and his companion had stationed themselves.
 

 Gartman carried a large flashlight, and focusing the light on the stolen car, he called to the escaping convicts to come out and surrender. The young people with the convicts made their presence known by crying out and asking the deputies not to shoot.
 

 Prior to the shot fired by Jones, Floyd Boyce and two of the convicts left the parked car and apparently crossed the levee. One of the convicts was killed the next day near the spot where the stolen car was parked. Bruce Fowler, the other convict, was killed at Vicksburg, Mississippi, a few days later. William Meharg, William Landers, and William Heard, remained near the stolen car and apparently' did some of the shooting which immediately followed the shot fired by Jones. As’ soon as this shooting had ceased, William Heard and William Landers took the two young girls, helped them over a fence, and made their way through the pecan orchard. The whereabouts of William Meharg and the boy, who was kidnapped with the girls, was not disclosed on the trial of the case.
 

 Gartman kept his flashlight focused on the two convicts and the two girls who were crossing the pecan orchard and when they had reached a point approximately 100 yards from the disabled car about six shots were fired, three from the levee side of the road, and three from the fence on the opposite side of the road. These shots were fired by the escaping convicts, and as a result, Gartman was struck and killed by twenty-eight buck-shots of small size, ranging from his shoulder to a point just below his hip on the left side of his body.
 

 On the following morning a posse, made up of officers and'citizens, began a systematic search for the convicts, one of whom
 
 *753
 
 •was found wounded a short distance away from the scene of the shooting of Gartman. This convict was immediately shot to death by a guard from the Arkansas Penitentiary who was one of the p.osse. On the next day, within a few miles of the scene of the killing, William Meharg, William Landers, and William Heard were captured with the three young people they had kidnapped, and later Floyd Boyce, after his two companions had been killed, was captured at Vicksburg, Mississippi.
 

 • After Floyd Boyce and Bruce Fowler left the place where Gartman was killed, they reached the highway running between the Town of Columbia and the City of Monroe, where they stopped J. H. Hinton and forced him to take them in his car. Near the Village of Waverly, one of the tires on the car became flat. Shortly thereafter, another automobile, containing Mrs. C. E. Eldridge, her sister and her young nephew, drove up. Fowler stopped them and asked where they could have a tire repaired, and then Boyce threatened Mrs. Eldridge with a shotgun. Boyce and Fowler took charge of the Eldridge car and its occupants and drove off in the direction of Vicksburg, leaving Hinton and his car in the road. As we have stated, when the party reached Vicksburg, Fowler was killed and Boyce was captured.
 

 Appellants’ first complaint is that the trial judge erred in overruling their objection to certain testimony sought to be elicited from Mrs.' C. E. Eldridge and her nephew, Woodrow Wall, relative to certain words and actions of the defendant, Floyd Boyce. On the trial of the casé, the State proved, without objection, the kidnapping of the three young persons in the Town of Rayville and the actions of the kidnappers up to and including the time of the killing of Gartman; also the kidnapping by Boyce and Fowler of Hinton and of Mrs. Eldridge and her companions.
 

 When Mrs. Eldridge and her nephew, Woodrow Wall, were testifying, the defendants objected to the witnesses testifying “minutely and in detail, the actions of the kidnapper, Floyd Boyce, during the entire period while kidnapped.” The objection was predicated on the contention that the testimony was irrelevant, immaterial, not a part of the res gestae, and that it had no connection with the killing of Gartman. The testimony was offered by the State for the purpose of showing flight on the part of the defendant Boyce, his resistance to arrest at the time of capture, and his identity as one of the parties charged in the indictment; also to prove possession and identity of the weapons which were taken from him as weapons that were used in connection with the homicide.
 

 The testimony was admitted by the trial judge solely for the purpose of establishing flight and for the purpose of establishing the identity of the guns found in the possession of Boyce. The testimony was further admitted to be considered by the jury only as to the defendant Boyce and not as to the other defendants, and it was limited in this respect by the proper instruction of the trial judge.
 

 
 *755
 
 We do not find any error in the ruling of which defendants complain. The testimony was clearly relevant as to the defendant Boyce against whom it was offered, and as to whom its effect was restricted by the instruction of the trial judge that it was not to be used or considered by the jury against the other defendants.
 

 Although not specifically urging it in their objection, defendants contend that the testimony tended to show the commission of another crime and, as such, it was inadmissible. The case of State v. Bates, et al., 46 La.Ann. 849, 15 So. 204, is cited in support of the contention.
 

 It is a general rule that when a person is on trial for one offense, evidence' of another extraneous offense is inadmissible. But this rule is subject to special exceptions. It is so stated in State v. Bates, et al., supra.
 

 The general rule as to the admissibility of the commission of other crimes is clearly set forth in the case of State v. Bay, 148 La. 559, 87 So. 294.
 

 In State v. Mitchell, 181 La. 135, 158 So. 820, it was said: “As a general rule, evidence tending to prove that the defendant committed another crime than that for which he was on trial is irrelevent and inadmissible. But there are exceptions to the rule, and, when the evidence falls within an exception to the rule, it is admissible, notwithstanding its prejudicial effect.”
 

 It is elementary that evidence of flight is relevant testimony, the effect of which is for the jury.
 

 The evidence of possession of firearms used in the shooting and carried by the accused from the scene of the shooting' to the place of capture is relevant for the purpose of identifying the weapons and. as tending to connect the possessor with the crime charged.
 

 The testimony of Mrs. Eldridge and Woodward Wall was used only against Boyce and admitted only as to him. It was not, under the instruction of the trial judge, used against the other defendants;, hence, they can not complain. It must be presumed that the jury followed the instruction of the trial judge.
 

 The appellants’ next complaint is-that the trial judge erred in overruling their objection to the testimony given by Miss Pauline Sanders, a witness called, on behalf of the State.
 

 When the defendants were arrested, they were placed in jail at Monroe, Louisiana. The sheriff of Caldwell Parish and the' Assistant District Attorney for the Parish called at the jail and talked with each of the defendants about the killing of Gartman. The defendants were advised that they were not required to make a statement and if they did make such a statement, it would likely be used as evidence against them. However, each defendant voluntarily made a statement. All the statements, in the form of questions and answers, were taken in shorthand by Miss Pauline Sanders, a stenographer employed in the sheriff’s office at Monroe. The statements were later transcribed by Miss Sanders from her notes and delivered to the officials of Caldwell Parish but were
 
 *757
 
 not presented to the defendants for the purpose of obtaining their signatures. When the statements were offered in evidence on the trial of the case, the defendants objected to their introduction on the .ground they were not admissible because they Were not signed. The objection was ■sustained. Miss Sanders was then called as a witness by the State. While she was being examined, counsel for defendants and counsel for the State, were in possession of transcribed copies of the statements which had been previously made by the witness from her shorthand notes. When counsel for the State proceeded to interrogate the witness relative to the statements made by each of the defendants in her presence at Monroe, the defendants objected to the testimony. •
 

 The basis of the objection was that the ■district attorney was reading the questions from the transcription of the shorthand notes and that the witness was answering them by reading from the shorthand notes themselves. However, the statement per curiam shows that the witness, while testifying, did not read her answers from her shorthand notes hut only referred to them at times during her examination. “She was questioned and her answer to each question was given as every other witness who testified in the case. Questions and answers of the record of the statements made were not read in whole or in part to the jury as evidence in the case.”
 

 No objection was made that the statements were not voluntary statements. It was shown that the witness was requested to take the statements, and in her testimony she was permitted to refer to her original notes and not to the transcription thereof for the purpose of refreshing her memory while testifying. We think it was permissible for the witness in testifying with respect to the defendants’ statements to use her stenographic notes for the purpose of refreshing her memory. Code Cr. Proc. art. 375; State v. Terrell, 175 La. 758, 144 So. 488.
 

 For the reasons assigned, the conviction and sentence of each of the defendants is affirmed.