292 So.2d 711 (1974)
STATE of Louisiana
v.
Harold Joe LANE.
No. 54160.
Supreme Court of Louisiana.
March 25, 1974.
*713 Merwin M. Brandon, Jr., Bastrop, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Joe Rolfe White, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
A bill of indictment charged that appellant Harold Joe Lane murdered Billy Bray on or about December 26, 1972. After a jury trial he was convicted of manslaughter on June 26, 1973 and sentenced on July 31, 1973 to serve fifteen years in the custody of the Louisiana Department of Corrections with credit for time served.
During midmorning of December 26, 1972 appellant, Grady Moffett, Sunni Gay Holley, Billy Bray and Virginia Lane drove to the Rainbow Inn, a tavern located several miles north of the city limits of Bastrop in Morehouse Parish. They had been drinking at the home of Virginia Lane and continued their indulgence at the Rainbow Inn. Before leaving appellant was made aware that Bray was armed with a pistol.
Apparently an argument developed between Bray and appellant over the attentions of one of the girls. A telephone conversation with appellant's mother apparently provoked further arguments, this time between appellant and Virginia Lane in which Bray apparently became involved. Shortly thereafter appellant shot Bray, who was some three to six feet from appellant and moving toward him at the time. There are differences in the testimony as to whether the deceased had a cue ball or a cue stick, or both, and whether he made threatening gestures toward the appellant immediately prior to the shooting.
Appellant admitted shooting Bray, testifying that Bray came at him with a cue ball and pool stick when he pushed one of the girls away from the telephone during their argument. Immediately after the killing, appellant's companions herded him out to the car. He was later arrested in Texas.
There is no expert testimony as to how much the group had been drinking, except the coroner's finding that the victim had a blood alcohol content of .258 percent.
This brief narration of facts is assembled from appellant's brief as corroborated by the testimony of the bartender at the Rainbow Inn. This statement was considered necessary to a proper understanding of the rulings of the trial judge on the relevancy of certain evidence.

Bills 1 and 3
These bills concern the same issuethe relevancy of evidence of flight after the crime; therefore, they are discussed together.
Bill 1 was reserved during the cross-examination of the girl Sunni Gay Holley, a member of the party at which this killing occurred. She was asked, "Where did you all go?" (meaning after the shooting); *714 to which she answered, "From there we went to Arkansas." Counsel for appellant objected that the conduct of appellant and where he and his companions went after the shooting was not material. The objection was overruled and this bill was reserved. Later in the questioning of the witness, the Assistant District Attorney asked her where they went after their first stops. Appellant again objected, was overruled, and he reserved Bill 3.
In brief the argument is repeated that at the time of the cross-examination of this witness, the fact that appellant and his companions had left the Rainbow Inn was established. Where they went after the killing, it is contended, was therefore immaterial. This line of questioning, it is argued, was merely an attempt to prejudice the defendant by repeatedly emphasizing to the jury that appellant left the scene of the shooting and could have no bearing upon the question whether appellant shot the deceased.
Evidence of flight is relevant; the effect to be given to the evidence being a question for the jury. State v. Meharg, 196 La. 748, 200 So. 25 (1941). The theory of its relevancy is that appellant's flight from the vicinity of where the crime was committed tends to indicate consciousness of guilt, for it is not to be supposed that one who is innocent and conscious of that fact would flee. The rule applies to evidence of flight where the crime was committed openly and in the presence of witnesses. State v. Nash, 115 La. 719, 39 So. 854 (1905); 29 Am.Jur.2d, Evidence, ¶ 280. See also State v. Nelson, 261 La. 153, 259 So.2d 46 (1972); State v. Pierre, 261 La. 42, 259 So.2d 6 (1972); State v. Johnson, 249 La. 950, 192 So.2d 135, cert. denied, 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374; State v. Neal, 231 La. 1048, 93 So.2d 554 (1957); 30 Am.Jur.2d, Evidence, ¶ 1128.
Upon this authority, the evidence of flight from the crime until arrest is relevant and these bills are without merit.

Bill 2
On cross-examination the Assistant District Attorney also asked Sunni Gay Holley what weapons were in the car during the flight. She answered "shotgun". Again counsel for appellant objected on the basis of relevancy. The objection was overruled and this bill was reserved. She then stated that Moffett, one of the group in flight, took the shotgun out of the trunk and put it in the back seat.
The argument the defense makes is that appellant's actions subsequent to the shooting and the weapon or weapons placed in his possession subsequent to the shooting are "occurrences after the fact," not relevant to the shooting. Furthermore, it is argued, Bray was shot with a pistol, not a shotgun.
"Evidence of possession of firearms used in the shooting and carried by the accused from the scene of the shooting to the place of capture is relevant for the purpose of identifying the weapons and as tending to connect the possessor with the crime charged." State v. Meharg, 196 La. 748, 200 So. 25 (1941).
Although the defense contends that Bray was not shot with a shotgun, the State argues that the question was relevant to show that "the accused had in his possession immediately after the shooting weapons or firearms possibly used in the shooting." The entire transcript is not before us and we cannot determine with sufficient certainty whether a shotgun could "possibly" have been used in the shooting. Under these circumstances we will not disturb the ruling of the trial judge on an objection to the relevancy of the evidence.
An objection to evidence as irrelevant is the weakest of all objections. State v. Labry, 124 La. 748, 50 So. 700 (1910). "Relevant evidence is that tending to show the commission of the offense and the intent. . . ." and "Facts necessary to be known to explain a relevant fact, or *715 which support an inference raised by such fact, are admissible." La.R.S. 15:441.
Thus, on this authority, possession of firearms in flight from the vicinity of the shooting would undoubtedly be relevant to the general criminal intent of appellant. And even if the shotgun was not the gun used in the killing, error, if any, in admitting reference to the gun into evidence, was harmless in view of substantial independent evidence that appellant shot Bray, including appellant's admission of the shooting.
Connexity of the evidence is a matter of fact for the jury to decide so long as the objects introduced are shown to the satisfaction of the trial judge to have some relevancy, i. e., some logical or rational connection with the fact sought to be proved. State v. Wright, 254 La. 521, 225 So.2d 201 (1969).

Bill 4
Appellant took the stand in his own behalf. In questioning him defense counsel attempted to show that because of his previous incarceration in the Colorado Penitentiary he had a heightened awareness of danger in his association with others, and this made his fear of attack greater than that of the ordinary man. After having been asked if he was ever threatened while an inmate of the Colorado Penitentiary, and answering affirmatively, he was then asked to whom an inmate could turn for help when trouble arose in the penitentiary. Objection to this question was sustained.
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." La.R.S. 15:275.
The ruling of the trial judge is correct. The evidence was too remote. State v. Bouvy, 124 La. 1054, 50 So. 849 (1910); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971). The material issue in a plea of self-defense is whether it appears to a reasonable person, not one obsessed with unnatural fear, that his life is in danger or that he is in danger of great bodily harm. State v. Ciaccio, 163 La. 563, 112 So. 486 (1927); State v. Austin, 104 La. 409, 29 So. 23 (1900). Therefore this line of questioning was immaterial from its inception.

Bill 5
While appellant was under cross-examination, the State's attorney questioned him about the amount of money he had when he left Dallas to come to Bastrop the morning of the shooting. The trial judge overruled the defense objection to the relevancy of this evidence, for the quantity of drinks the party consumed and who had paid for them had already been discussed by other witnesses.
"When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case." La.R.S. 15:280. And mere doubts as to the propriety or the extent of cross-examination are always resolved in favor of the cross-examiner. State v. Richardson, 258 La. 62, 245 So.2d 357 (1971). See also State v. Jones, 263 La. 1012, 270 So.2d 489 (1972).

Bill 6
During the trial defense counsel filed a written motion setting forth that when charged with murder under Article 30 of the Criminal Code, as in this case, a verdict of "guilty as charged" requires that the accused be sentenced to death. For, according to Article 814 of the Code of Criminal Procedure, the responsive verdicts to a murder charge are: "Guilty as charged", "Guilty without capital punishment", "Guilty of manslaughter" and "Not guilty".
*716 However, according to the motion, the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), abolished the death penalty as then administered and imposed in states with statutory plans similar to Louisiana's. Thus, the motion continues, a directed verdict of "Guilty as charged" as required by article 814 would make the imposition of the death penalty necessary; therefore, such a verdict should not be permitted. Accordingly appellant moved that the trial judge instruct that only the three responsive verdicts, "Guilty without capital punishment", "Guilty of manslaughter" and "Not guilty" be charged, eliminating from his instructions the verdict "Guilty as charged".
The trial judge denied the motion and charged the jury that the following responsive verdicts could be rendered to the charge; "Guilty without capital punishment or benefit of parole, probation, commutation or suspension of sentence", "Guilty without capital punishment", "Guilty of manslaughter" and "Not guilty". In doing so the trial judge eliminated "Guilty as charged" from the responsive verdicts and substituted "`[Guilty] without capital punishment or benefit of parole, probation, commutation or suspension of sentence'", relying upon article 817, as amended by Act 502 of 1972, as being applicable to the facts before him.[1] The trial judge apparently reasoned that article 817 had the effect of amending article 814 by eliminating the responsive verdict of "Guilty as charged" and substituting therefor the responsive verdict which he instructed the jury it could render. Appellant reserved this bill to the ruling.
The argument appellant makes is that article 817 as then in effect did not amend article 814; nor did it amend the death penalty provision of Article 30 of the Criminal Code. It was error, therefore, to substitute the responsive verdict charge permitted by article 817 for the "Guilty as charged" verdict made invalid by the decision in the Furman case.
In both respects the argument is untenable. Article 817 clearly prescribes "Qualifying verdicts in capital and noncapital cases." Act 502 of 1972 which amended the article provides that "All law or parts of laws in conflict herewith are hereby repealed." It was correct for the trial judge to decide, therefore, that both the penalty provision of Article 30 of the Criminal Code and the responsive verdicts for murder prescribed by article 814 were governed by the qualifying verdict in capital cases authorized by article 817. The instructions on responsive verdicts were therefore proper. The bill has no merit.

Bill 7
When the trial judge denied appellant's motion for a directed verdict, this *717 bill was reserved. Appellant argues in support of his motion that the evidence failed to rebut his claim of self-defense, contending that Bray's threat or attack upon him was such that the shooting was justifiable self-defense. At the same time, appellant concedes that he cannot say that there was "no evidence" to support the verdict. This being so, the motion is without merit. State v. Douglas, 278 So.2d 485 (1973), permits a directed verdict only when there is "no evidence" to an essential element of the crime charged.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs, disagreeing with discussion of bill #2.
NOTES
[1] In two decisions today, State v. Ramsey, La., 292 So.2d 708 and State v. Varice, La., 292 So.2d 703, we upheld the constitutionality of Act 502 of 1972 (La.Code of Crim.Proc. Art. 817) except insofar as it denied the convicted party commutation of sentence. In so doing we struck the word "commutation" from the article under the severability clause of Act 502 of 1972. At the time of this prosecution, article 817 provided:

"In a capital case the jury may qualify its verdict of guilty as follows:
"(1) With the addition of the words `without capital punishment', in which case the punishment shall be imprisonment at hard labor for life, or
"(2) With the addition of the words `without capital punishment or benefit of parole, probation, commutation or suspension of sentence', in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.
"In noncapital cases, any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding.
"Section 2. If any provision, phrase, word or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
"Section 3. All laws or parts of laws in conflict herewith are hereby repealed."