STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN GREELY AND CYRIL DEADY, DEFENDANTS-APPELLANTS.

Argued February 2, 1953—Decided February 24, 1953.

*Mr. Frederick Klaessig* argued the cause for appellant John Greely.

*Mr. Edward J. Madden* argued the cause for appellant Cyril Deady (*Mr. Edward M. Malone*, attorney).

*Mr. Frank J. V. Gimino,* Assistant Prosecutor of Hudson County, argued the cause for the State (*Mr. Horace K. Roberson,* Prosecutor of Hudson County).

The opinion of the court was delivered by

WACHENFELD, J.   Greely and Deady were indicted and convicted of murder and, in compliance with the recommendation made by the jury, were sentenced to life imprisonment.

The indictment charged the defendants, on the 8th day of November 1951, "did wilfully, feloniously and of their malice aforethought kill and murder Selacius Klein, against the peace of this State, the government and the dignity of the same."

Answering a bill of particulars, the State used practically the same statutory phraseology employed in the indictment but added "in the commission of a robbery."

The locale of the crime and some of the surrounding circumstances, according to the defendants' version, were not too pleasant.

Klein was the General Superior of the Order of Brothers of the Poor of St. Francis.   He was 71 years of age and came to Hoboken with three other brothers of the Order in the early afternoon of November 8, 1951.   They went to St. Mary's Hospital around 3 P. M. and were there a short while, when Klein left and went to the public toilet in Church Square Park, which is diagonally across the street from the hospital.

When he entered, both defendants were there.   Greely struck him in the mouth with his hand, describing it as "a light slap in the jaw."   The deceased left but returned shortly.   Deady then "grabbed him by the arms" and Greely "reached into the pockets of his pants and took some money."

Both defendants denied the victim fell, but a witness for the State who entered shortly thereafter and saw Klein lying

on the floor described him as "apparently sleeping." The money taken from him amounted to $18, which admittedly was divided between the two defendants.

Klein recovered at least sufficiently to permit his leaving the place, as he reurned to St. Mary's Hospital and rejoined his companions. His trousers were torn and he borrowed a needle and thread to mend them. The four brothers left St. Mary's Hospital around 5 P. M. and went to St. Francis Hospital in Jersey City to keep a dinner engagement. It was then noticed Klein had suffered an injury to his lip, and he was treated at the hospital clinic.

After dinner one of the brothers observed Klein looked rather sick and was "slumped over in his chair a little bit." He became very ill around 7 P. M. and lapsed into unconsciousness at 9 P. M. He died at 10:25 on the following Saturday morning without ever having regained consciousness.

There was evidence that the death occurred as the result of injuries inflicted during the robbery, of which more hereafter.

The trial court instructed the jury in its charge it should not consider murder in the second degree or manslaughter; that the murder involved was perpetrated in the commission of robbery and was therefore murder in the first degree. The jury was limited in returning a verdict of guilty of murder in the first degree, which it was instructed would carry with it the death penalty unless life imprisonment were recommended, or a verdict of acquittal. No instructions were given as to the statutory obligations of designating by its verdict the degree of murder on which it had decided.

The jury returned a verdict of "guilty as charged, with a recommendation of life imprisonment."

Both defendants appeal, presenting the question of the propriety of the verdict so returned, and the inquiry is whether or not error was committed in the court's accepting a verdict from the jury of "guilty as charged, with a recommendation of life imprisonment."

The applicable statute is *N. J. S.* 2A:113–2:

"Murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy, is murder in the first degree. Any other kind of murder is murder in the *second degree.* A jury finding a person guilty of murder shall designate by their verdict whether it be murder in the first degree or in the second degree."

The adjudications construing this mandatory provision are clear and precise. In *State v. Turco,* 98 *N. J. L.* 61 (*Sup. Ct.* 1922), cited and followed in the other cases hereafter mentioned, the court, referring to the statute, said:

"* * * a verdict * * * which fails to designate the degree of murder of which the jury find the defendant guilty, is so fatally defective that no judgment can be legally pronounced thereon."

In *State v. Cooper,* 2 *N. J.* 540 (1949), it was expressed thusly:

"It is not a sufficient answer to say that the theory of the State was a killing in the perpetration or attempted perpetration of a robbery by the accused; and that this was the issue submitted to the jury for determination, and the alternative to acquittal under the charge was a conviction of murder in the first degree. First, the statute is imperative in its command that, if the accused be found guilty, the jury shall determine whether the offense be murder in the first degree or in the second degree. * * *"

And again:

"Not only is it understandable that the Legislature deemed it essential that in resolving an issue involving the death penalty or life imprisonment, the finding be specific and not left to conjecture; it is inconceivable that it would not have so provided."

In *State v. Cleveland,* 6 *N. J.* 316 (1951), embracing what was said in *State v. Cooper, supra,* we repeated:

" 'A finding of circumstances constituting murder of the first degree is not to be annexed to a verdict of "guilty" by intendment

or a presumption based upon the evidence. That is a solemn obligation of the jury in a matter of the utmost gravity; and its fulfillment cannot be made to rest on bare inference.' "

True, these cases involved the infliction of a death penalty, but the doctrine as enunciated in the *Cooper* case, *supra,* referred also to "an issue involving the death penalty or life imprisonment."

It is the duty of the jury to find a verdict in compliance with the statutory mandate, and the degree of murder of which the defendant is guilty is a specific prerequisite. It has been termed by our judicial pronouncements "a solemn obligation of the jury in a matter of the utmost importance" and the statute was classified as being "imperative in its command."

Can the rule be otherwise where the death penalty was absent and the sentence imposed life imprisonment? We think not. The wording and the demands of the statute are still the same. The obligation placed upon the jury was implicit. The necessity for following it has been expressed in strong and forceful language and it has already been held as applying to the sentence of life imprisonment. *State v. Cooper, supra.*

There was error in failing to comply with the legislative mandate, requiring a reversal of the judgment below.

Deady's appeal was limited to the above issue, but inasmuch as a new trial will be necessary as to both defendants, we feel obligated to pass upon the other points raised by the defendant Greely so the court below will have the benefit of the ruling so made on the trial *de novo.*

It is contended error was committed in denying the defendant's motion for an acquittal as the facts established by the State did not prove the crime charged in the indictment, stressing the failure to prove the *corpus delicti* and a connection between the robbery and the homicide, asserting if the defendant's statement is true, "then the deceased was engaged in a provocative behavior inviting further inquiry" and "if there was a homicide it was committed by strangers."

There is little merit to the suggestion so advanced. In felonious homicide the *corpus delicti* consists of two fundamental and necessary facts: death and the criminal agency causing it.

Professor Wigmore's elaborate definition of the term *"corpus delicti"* is embodied and restated verbatim in *State v. Klausner*, 4 *N. J. Super*. 427 (*App. Div.* 1949), and needs no further elucidation.

The State's theory was the defendants robbed the deceased at the time and place alleged in the indictment and in the robbery inflicted injuries upon him which resulted in his death.

The robbery of the deceased by the defendants is admitted; the assault is not disputed, although its violence is minimized. Dr. Braunstein was definite in his conclusions that "there is no question at all but that the hemorrhage was due to the injury. * * * We found even more important contusions within the scalp not showing externally but in the scalp in the right occipito-parietal region and also in the left occipital region," and "a hemorrhage of that type is always due to trauma."

The jury is not compelled to limit itself exclusively to the physical facts conceded by the defendants in their respective statements, but has a right to draw legitimate and proper legal inferences from the facts so admitted.

If in a robbery the victim was thrown to the floor with sufficient force to render him unconscious or semi-unconscious, inferrable from the fact that he was "stretched out" and "asleep on the floor," and there was medical testimony that he sustained an injury from which he subsequently died, there is sufficient to create a *prima facie* case against the defendants. Here the medical testimony, plus the physical facts, sustains the State's case and requires its submission to a jury.

The challenge to the propriety of the admission of two photographs was abandoned on oral argument.

██ It is asserted there was error in the court's refusal to exclude cross-examination of the defendant Greely on his denial of a conviction of crime, and the following question and the statements made by the prosecutor in reference to it:

"Q. Never? As John Greely, weren't you arrested in Hoboken on 4/28 * * * on a charge of committing indecent and lewd acts with a minor, weren't you?

Mr. Klaessig: I object at this point now. This man is a public prosecutor. He knows there's no conviction. * * *

Mr. Gimino: It says he was sentenced to serve 170 days in the Hudson County Penitentiary.

Mr. Klaessig: I object to· it, your Honor. I don't believe that he was convicted of this particular crime."

The State's justification is based upon its efforts to test the truth of the defendant's statement, Exhibit S–16. The question in the form and circumstances established here and the prosecutor's statements were improper, but most of their injurious effects were neutralized by the trial judge, whose alertness and fairness were evident by his prompt intercession and authoritative comment demonstrating the factual impossibility of the implications made by reason of the limited jurisdiction of the magistrate's court, in which the incident occurred.

The disposition of a parallel issue in *State v. Cooper*, 10 *N. J.* 532 (1952), amply answers the question here raised and needs no further clarification:

"The State has the right to prove prior convictions of crime to affect credibility and may inquire of a witness in such an endeavor. *Roop v. State*, 58 *N. J. L.* 479 (*Sup. Ct.* 1896) ; *State v. Henson*, 66 *N. J. L.* 601 (*E. & A.* 1901) ; *State v. Runyon*, 93 *N. J. L.* 16 (*Sup. Ct.* 1919), affirmed 94 *N. J. L.* 265 (*E. & A.* 1920) ; *State v. Young*, 93 *N. J. L.* 396 (*E. & A.* 1919) ; *State v. Rodia*, 132 *N. J. L.* 199 (*E. & A.* 1944). A prosecutor has no right, however, to employ such questions if in fact he has knowledge that no such convictions exist. To create a false premise for the consideration of the jury is patently improper practice."

The question and statements by the prosecutor were improper and on retrial should not be repeated.

■ Impropriety is charged in denying the defendant's right to cross-examine the State's witness Messano. The question was: "Have you anything to fear, Mr. Messano, in relation to this case?" The record indicates the inquiry was answered in the negative, and under these circumstances we have difficulty in perceiving error.

■ The appellant's claim of error in the charge to the jury that the failure of Deady to testify justified it in presuming he could not deny the facts is determined in our recent decision in *State v. Costa*, 11 *N. J.* 239 (1953):

"The criterion is whether there are facts in evidence concerning the acts or conduct of the defendant within his personal knowledge which are inculpative or imputative in some degree of guilt, which facts he by his oath can deny."

There were facts in the record which were "inculpative or imputative in some degree of guilt" which he could have denied, and his failure to do so warranted the charge made. Even assuming error, the result would not be altered. There was no objection made as required and it was not "plain error" within the exception to the rule. Additionally, the portion of the charge complained of relates in its entirety solely to the defendant Deady, who does not appeal or object on this ground.

■ There was no error in the court's failure to charge the jury in respect to the defendant's contention that he had been assaulted or on the question of provocation for the slap. No request to charge had been submitted in this respect and the court did not in its charge dwell upon any of the factual developments, saying:

"The court has tried to define the law to you but the court has omitted deliberately to touch upon the facts in this case as it believes that the matter of dealing with the facts in this case is solely your particular function and province."

The judgment below is reversed for the reasons herein stated and the cause remanded for a trial *de novo.*.

VANDERBILT, C. J. ·(dissenting). The defendants were indicted for murder in the first degree committed in the commission of a robbery. The jury by its verdict found the defendants "guilty as charged, with a recommendation of life imprisonment."

·The verdict here differs from those in the cases of *State v. Turco,* 98 *N. J. L.* 61 (*Sup. Ct.* 1922); *State v. Cooper,* 2 *N. J.* 540 (1949) and *State v. Cleveland,* 6 *N. J.* 316 (1951). The verdict here is unambiguous. It is unmistakably a verdict of murder in the first degree because by statute and under the charge of the court a recommendation of life imprisonment is restricted to cases of murder in the first degree, *N. J. S.* 2A:113–4. The recommendation of life imprisonment inexorably stamps the verdict of "guilty as charged" as guilty of murder in the first degree.

This was not so in the *Turco, Cooper* and *Cleveland* cases. On the trial of each of ·these cases on an indictment for murder in the first degree the verdict was "guilty," but without any recommendation of life imprisonment. Each of these verdicts was accordingly ambiguous as to whether the jury had in mind murder in the first or in the second degree, and each was ·accordingly set aside.

But here the verdict, as I have said, is unambiguous and unmistakable. To set it aside is to make a shibboleth out of the statute, *N. J. S.* 2A:113–2.

I would affirm the convictions.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Chief Justice VANDERBILT—1.