UNITED STATES of America ex rel. James Willie CLEVELAND 28598, Appellant,

v.

**WARDEN, NEW JERSEY STATE PRISON.**

**No. 75–2004.**

United States Court of Appeals, Third Circuit.

Argued May 28, 1976.

Reassigned Sept. 16, 1976.

Decided Nov. 11, 1976.

Robert J. Schmitt, Jr., Aronsohn, Kahn & Springstead, Hackensack, N. J., for appellant.

Burrell Ives Humphreys, Passaic County Prosecutor, Paterson, N. J., for appellee; John P. Goceljak, Asst. Prosecutor, of counsel.

Before ADAMS and HUNTER, Circuit Judges, and SCHWARTZ, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal from a denial of a writ of habeas corpus, the primary issue is whether a state court, in failing to provide petitioner, James Willie Cleveland, with a free transcript of his trial in effect aborted his opportunity for appeal and thus violated his equal protection rights.[1]

I.

Cleveland was convicted of first degree murder in the Passaic County (N.J.) Court in 1951, and sentenced to life imprisonment. Previously, he had been convicted of the same crime and condemned to death. But the New Jersey Supreme Court reversed that judgment and ordered a new trial, which resulted in a second conviction.[2]

After the second trial, Cleveland's appointed counsel filed a notice of appeal. Immediately thereafter, however, the attorneys who had represented petitioner at both trials, notified the State Supreme Court of their desire to retire as counsel. They informed the court of Cleveland's repeated requests for an appeal, his state of destitution, and the lack of statutory authorization for payment of the costs of appeal. Cleveland's counsel also expressed their opinion that they perceived no meritorious grounds for an appeal. Subsequently, on the advice of the New Jersey Supreme Court that they need not pursue an appeal they deemed useless, the attorneys withdrew from the case. In a letter terminating their representation, the attorneys informed Cleveland that appointed counsel was unavailable to him and that he personally would have to finance any appeal. After receiving that advice, petitioner did not independently pursue the appeal.

When Cleveland attempted to initiate his appeal in 1951, immediately after his conviction, the State of New Jersey was providing free transcripts only to indigent per-

---

1. Petitioner also claims that he was deprived of the right to counsel when his appointed attorneys were permitted to withdraw at the inception of an attempted appeal. However, we cannot resolve this claim, at the present time, for reasons indicated in note 9, *infra*, and in our discussion of the "transcript" issue.

2. *State v. Cleveland*, 6 N.J. 316, 78 A.2d 560 (1951).

sons condemned to death. Hence, because he had been sentenced to life imprisonment, Cleveland, though clearly indigent, could not obtain a copy of his trial transcript without charge. A trial transcript, however, constituted a prerequisite for the type of appeal applicable in Cleveland's situation. As the petitioner lacked a transcript, and could not afford one, his appeal could not be prosecuted. The State therefore moved to dismiss the appeal, and an order so providing was entered on February 11, 1952.

In September of 1966, with newly appointed counsel, Cleveland applied for post-conviction relief in the Passaic County Court which had tried and sentenced him. Rather than decide the case on the merits, the county court, in May, 1968, reserved judgment but directed the petitioner to seek certification of his case by the New Jersey Supreme Court. Cleveland appealed to the Appellate Division of the Superior Court, which affirmed the county court in February of 1969. He then filed a petition for certification by the New Jersey Supreme Court in October, 1969, but that court denied the petition.

During the course of the state proceedings for post-conviction relief, Cleveland's assigned counsel requested the court reporter, who had taken notes at the second trial, to prepare a transcript. However, the reporter informed him that the trial notes had been discarded in 1959. The disposal of the stenographic record occurred even though the Supreme Court for New Jersey had issued, in 1958, an order instructing court reporters to preserve all notes. Despite the absence of a trial transcript, Cleveland proceeded with his petition for

relief, asserting deprivation of his right to a trial transcript as well as his right to counsel.

After two earlier applications for habeas corpus relief were dismissed for want of jurisdiction,[3] the present petition was submitted. Adopting, without reservation, the report and recommendation of the magistrate who reviewed the petition, the District Court for New Jersey again dismissed without an evidentiary hearing. It is from this last dismissal that Cleveland appeals.

Because the former New Jersey court rule, denying a free transcript to indigents not facing the death penalty but requiring a transcript to perfect an appeal, may have sufficiently violated Cleveland's equal protection rights so as to warrant post-conviction relief in the case at hand, we reinstate the petition and remand to the district court.[4]

## II.

In *Griffin v. Illinois*,[5] the United States Supreme Court established that, if appellate review is afforded to any criminal defendant, equal protection demands that indigents have the same opportunity as non-indigents to appeal. The Court stated: "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."[6] The Supreme Court then deemed unconstitutional an Illinois statute that required a transcript as a condition of appeal but barred free copies to indigents unless they were condemned to death. Virtually identi-

---

3. The previous applications for relief brought before the District Court for New Jersey were dismissed for lack of jurisdiction because petitioner was then incarcerated in Maryland. *See United States ex rel. Van Scoten v. Commonwealth of Pennsylvania,* 404 F.2d 767 (3d Cir. 1968). The present petition was filed upon his return to a state prison in New Jersey. Petitioner's present parole status does not render moot his claim for relief. *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1971).

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the appeal is from a district court denial of a petition for writ of habeas corpus, a final judgment. Petitioner has obtained a certificate of probable cause from this Court satisfying 28 U.S.C. § 2253 and Fed. R.App.P. Rule 22.

5. 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

6. *Id.* at 19, 76 S.Ct. at 591.

cal with the Illinois statute, the New Jersey rule at issue in this action seemingly suffers from the same constitutional infirmities that were extirpated in *Griffin*. Since the principles enunciated in *Griffin* have been extended retroactively,[7] they would appear to control the present case.

The magistrate's report, which the district court adopted, sought to distinguish the *Griffin* case, noting that Cleveland, unlike Griffin, neither requested a transcript nor alleged that specific substantive errors had infected his second trial. However, given the special factual context that confronted Cleveland, the attempted distinction between *Griffin* and the present case is not convincing.

■ Petitioner's failure to request the transcript in 1951 is quite understandable. No longer represented by counsel, he had been informed that free transcripts were accorded only to indigents sentenced to death. It is highly questionable, therefore, whether Cleveland can be said to have waived his right to an appeal. Waiver, it is well settled, requires the voluntary and intelligent relinquishment of a known right.[8] Not only did petitioner fail to realize that he had the right to appeal, despite the then existing New Jersey rule which indicated otherwise, but it also is doubtful whether he voluntarily surrendered any such right.

Moreover, to insist that Cleveland must have demanded formally what he knew he would not receive, as the district court apparently would require before conferring the benefits of *Griffin* on him, would appear to place a premium on empty rituals. If we penalized Cleveland simply because he did not make a request which would have proved futile in 1951, we might well encourage criminal defendants, in general, to engage in a plethora of procedural exercises in the hope of qualifying for the rewards wrought by evolving constitutional interpretations. To do so would overburden a criminal justice system which already strains to process charges that are now necessarily lodged with it. We cannot say, therefore, that the petitioner should have, or could have, anticipated *Griffin* by requesting a transcript so as to secure the constitutional protection eventually mandated by that decision.

■ Similarly, we do not believe that Cleveland should be denied relief for failure to allege substantive trial mistakes in his habeas petition. Just as his vulnerable position explains the absence of a request for a transcript, so may it account for his silence as to the alleged trial errors. Evidently, petitioner did wish to challenge aspects of the second trial in 1951, as indicated at least by his filing of the notice of appeal.

With respect to substantive errors in his trial, Cleveland contends that the same coerced confession which caused reversal of the first trial was admitted in the second proceeding. He also raises questions concerning his identification by a witness and the admissibility of evidence involving bloodstains. While petitioner's original counsel expressed their view that no reversible error occurred in Cleveland's second trial, we are unable, at least at this stage, to evaluate their opinion without benefit of a transcript or the possible reconstruction of the trial record through an evidentiary hearing.[9] The State argues that the confes-

7. *Eskridge v. Washington Prison Board,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958). *See also* Justice Goldberg's discussion of *Griffin* and *Eskridge* in his dissent in *Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963) (Goldberg, J., dissenting).

8. *See, e. g., Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *Cf. Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

9. For this reason, we also are unable to consider, at this time, Cleveland's contention that the withdrawal of his appointed attorneys, prior to his attempted appeal in 1951, abridged his right to counsel. Even assuming that petitioner's interpretation of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) is tenable, we could not determine whether the original appeal was "wholly frivolous," absent a record of the trial proceedings.

sion could not have been admitted in the second trial, since that confession constituted the very grounds for reversal of the first trial. Without even a synopsis of the trial, or any attempt by either party to develop an evidentiary record, it is next to impossible to ascertain what actually occurred at the trial. Nor are we willing to speculate as to what transpired.

As there is an insufficient factual foundation with which to determine whether the grant of habeas corpus relief is justified, at least at this level, we remand to the district court for a hearing at which the State of New Jersey may, for example, reconstruct a record of the trial.[10] Of course, such replication may prove impossible; if so, the district court may have no choice but to grant the writ unless a new trial is ordered within a reasonable time. Nevertheless, we believe that the State of New Jersey should have an opportunity to demonstrate, factually and legally, that the petitioner is not entitled to the relief he seeks. While the district court may well have to grant that relief on remand, mere supposition that the trial was unfair does not warrant summary reversal of the conviction at this point in the proceedings, as the dissent maintains.[11] Moreover, it should be noted that any delay occasioned by remand to the district court is not unduly prejudicial to Cleveland's petition for relief, as he currently is on parole from prison.

## III.

The magistrate's report to the district court also urged denial of the petition on the ground that the unavailability of the transcript places the petitioner outside the ambit of *Griffin*. In *Norvell v. Illinois*,[12] the Supreme Court announced a narrow exception to the teachings in *Griffin*. There a petitioner was denied habeas relief because the court reporter who had transcribed his trial had died, and no one else could interpret the notes of the deceased court stenographer. Affirming the denial of relief, the Supreme Court posited that where a transcript is no longer available "through no fault of the State," relief may be denied as a matter of "practical accommodation."[13] Because we lack the requisite factual predicate, we cannot adjudge whether or not the State of New Jersey was at "fault" with respect to the disposal of the stenographic record. The New Jersey court directive of 1958 did order all court reporters to retain their notes. While the reporter may have violated his duty to preserve his records, this necessarily does not mean that the state was at "fault." Such a conclusion would rest, *inter alia,* on the circumstances surrounding the unavailability of the notes.

On the basis of the available facts, however, the *Norvell* exception to *Griffin* does not appear to be applicable to the present action. In *Norvell* the Court repeatedly emphasized that the petitioner "presumably" had the continuing services of his trial

---

**10.** Remand for a hearing is a remedy well within our discretion. 28 U.S.C. § 2243 empowers us to "dispose of [habeas petitions] as law and justice require." This Court has, on occasion, remanded for evidentiary hearings in the districts courts in habeas proceedings. *See, e. g., United States ex rel. Montgomery v. Brierly,* 414 F.2d 552, 560 (3d Cir. 1969).

**11.** The dissent suggests that a remand here will "exacerbate" relations between the federal and the state courts. However, we believe that our remedy is far less disruptive of federal-state comity than that proposed by the dissent. The State of New Jersey, on remand, may be able to show why Cleveland should not be afforded the relief he desires, thereby obviating release by a

federal court of a state prisoner contrary to the rulings of state courts.

In remanding, we note that it is somewhat anomalous that a federal court must review this particular state court conviction. For the New Jersey Supreme Court previously applied *Griffin* in a situation strikingly similar to that under scrutiny here. *State v. Welch,* 46 N.J. 57, 214 A.2d 857 (1965). However, in the habeas corpus proceedings launched by petitioner in 1966, the state courts inexplicable failed to deem *Welch* to be controlling.

**12.** 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1962).

**13.** *Id.* at 424, 83 S.Ct. 1368.

lawyer for purposes of appeal. It explicitly noted: "If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case."[14] The action now before us constitutes the "different case," and so *Norvell,* by its own terms, is inapposite. Consequently, our decision to remand to the district court stands immune from the limited exception to *Griffin.*

Accordingly, the order of dismissal of the district court will be vacated and the matter remanded to that court for further proceedings consistent with this opinion.

MURRAY M. SCHWARTZ, District Judge (concurring and dissenting).

I fully concur with the majority's holding that petitioner had been unconstitutionally deprived of a transcript which ultimately resulted in his being denied any meaningful appeal of his conviction. However, as a matter of logic, I either do not understand or cannot accept the majority position with respect to abridgment of right to counsel.[1] Far more important and necessitating this dissent, is an inability on my part to subscribe to the proposed remedy. Rather than remanding for an evidentiary hearing by the district court, I would grant the writ of habeas corpus 120 days from the date of issuance of the mandate of this court if the State of New Jersey has not retried and convicted petitioner in the interim.

Apparently recognizing the impossibility in this case of a meaningful appeal *nunc pro tunc,*[2] the majority has opted to remand the petition to the district court, with instructions to hold an evidentiary hearing, presumably pursuant to 28 U.S.C. § 2254. The majority's suggestion that through this hearing the district court should attempt "[to] reconstruct a record of the trial"[3] is hard to fathom. If the majority intends for

---

**14.** *Id.* at 422, 83 S.Ct. at 1368.

**1.** At note 9 of the majority opinion, it is stated: "For this reason [unavailability of a transcript], we also are unable to consider, at this time, Cleveland's contention that the withdrawal of his appointed attorneys, prior to his attempted appeal in 1951, abridged his right to counsel. Even assuming that petitioner's interpretation of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) is tenable, we could not determine whether the original appeal was 'wholly frivolous,' absent a record of the trial proceedings."
If the majority is using the word "record" to mean the trial record, it has expressly noted that the trial record has been destroyed and thus could never be produced. If, on the other hand, the majority reference to "record" is the "possible reconstruction of the trial record through an evidentiary hearing" (p. 1203), I question the validity of this alternative. With the destruction of the trial notes prior to preparation of a trial transcript, neither trial counsel nor any other counsel can make a conscientious investigation and thereafter opine that the appeal is frivolous. Further, if some oddity not now apparent would permit counsel to make the necessary representations without benefit of transcript and twenty-five years after the trial, a federal district court simply could not accept counsel's evaluation and documentation. *Cf. Ellis v. U.S.,* 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493

(1967). On the other hand, it cannot be said petitioner had an absolute right to counsel on appeal, for, while under *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), one has the right to counsel on an appeal of right, it is equally clear that counsel may withdraw from the proceeding if, after a conscientious investigation, counsel opines that the appeal is frivolous and the Court is satisfied with counsel's evaluation and documentation. With no trial transcript and the lapse of twenty-five years, the right to counsel on appeal for Sixth Amendment purposes can never be conclusively determined. Under that circumstance, if forced to reach the right to counsel issue, I would resolve it against defendant. But for the majority's mention of the issue, under my view of this case, the issue would never have to be addressed.

**2.** Reinstatement of petitioner's right of appeal *nunc pro tunc* has been prescribed as the appropriate remedy in a number of habeas cases considering the denial of an appeal of right. See, e. g., *Joseph v. White,* 404 F.2d 322 (5th Cir. 1968); *Bosler v. Swenson,* 363 F.2d 154 (8th Cir. 1966); *aff'd per curiam* 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967). *Garton v. Swenson,* 266 F.Supp. 726 (W.D.Mo.1967); *U.S. ex rel. Kumitis v. Rundle,* 244 F.Supp. 894 (E.D.Pa.1965); *Spaulding v. Taylor,* 234 F.Supp. 747 (D.Kan.1964).

**3.** P. 1204.

the district court to act as a surrogate state appeals court and decide the merits of petitioner's appeal, the effect would be an impermissible substitution of a habeas corpus *hearing* for an absolute right of appeal. The majority has cited no authority nor can this writer find any case which would sanction the "Great Writ" being employed as a procedural device to cure the unconstitutional denial of an appeal from a life sentence. The purpose of this extraordinary writ "is to test in a court of law the legality of restraints on a person's liberty." [4] The Writ was never intended as a federal substitute for a state court appeal.

Not only does the remedy proposed by the majority result in an inappropriate use of the writ, it also constitutes an unwise and unwarranted intrusion upon state court jurisdiction. If the district judge concludes he cannot make whatever requisite findings the majority envisions, he will have to conditionally grant the writ and that will end the matter. The majority implicitly recognizes that it is impossible to reconstruct the record 25 years after the trial took place.[5] Under that circumstance, one must question why there should be a fruitless remand to an overburdened district court. Aside from the practical aspects, one must also ask why there should be a remand remedy when that remedy is totally unrelated to the constitutional deprivation of the right to appeal which forms the basis of the habeas corpus petition.

If, on the other hand, the district judge denies the writ, there will surely be another appeal to this court encompassing constitutional and comity questions created solely by the majority's proposed remedy. Among the questions and answers being subsumed in the affirmative by reason of the majority are: Can federal habeas corpus ever be a substitute for a constitutional right of appeal in a State court? Should it be? Does a federal district court have the necessary grant of jurisdiction to be a surrogate State appeals court? Must a poor person who has been denied the right to appeal because of his poverty establish he would have won the appeal as a prerequisite to the obtaining of habeas corpus relief?

While the short term effect of the remedy of the majority might assuage the feelings of the State of New Jersey by affording it "an opportunity to demonstrate, factually and legally, that the petitioner is not entitled to the relief he seeks," [6] the long term result might be an exacerbation of state-federal relationships. "[C]ollateral review of state-court convictions by the federal courts, while certainly needed as a final safeguard against unconstitutional losses of liberty, nevertheless 'results in serious intrusions on values important to our system of government.' [footnote omitted]. Among those values are 'the minimization of friction between our federal and state systems of justice, and . . . the maintenance of the constitutional balance upon which the doctrine of federalism is founded.' [footnote omitted]." [7] If the District Court of New Jersey pursuant to the majority remedy, after hearing, performs the unprecedented, majority mandated state court appellate function and concludes adversely to the State of New Jersey, has not the federal intrusion upon a state court appellate function resulted in an increase of friction between federal and state systems of justice? Is this intrusion not exacerbated where the identical question has already been before the New Jersey State court which "inexplicably failed" to follow its own precedent? [8]

In summary, I do not believe it is the function of federal habeas corpus proceedings to repair state court proceedings which were correct as a matter of law in 1951 but made retroactively unconstitutional which had the effect of adversely affecting the rights of criminal defendants. If the error cannot be corrected at the state level, the

---

4. Sokol, *Federal Habeas Corpus* § 1 (2d ed.).

5. P. 1204.

6. *Id.*

7. *Zicarelli v. Gray,* 543 F.2d 466 (3d Cir. 1976).

8. Cf. Majority opinion, n.10.

only appropriate recourse is for the federal court to conditionally grant the writ.